IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | | |
|---|---|---|
| JASMIN HERNANDEZ, § | | |
|     Plaintiff, § | | |
| § | | |
| v. § | | |
| § | | |
| BAYLOR UNIVERSITY BOARD OF § | Civil Action No. 6:16-CV-00069-RP | |
| REGENTS; ART BRILES, in his official § | | |
| capacity as head football coach; IAN § | | |
| MCCAW, in his official capacity as § | | |
| athletic director, § | | |
|     Defendants. § | | |

## MOTION TO DISMISS OF DEFENDANT BAYLOR UNIVERSITY BOARD OF REGENTS AND DEFENDANTS IAN MCCAW AND ART BRILES IN THEIR OFFICIAL CAPACITIES

TO THE JUDGE OF THE HONORABLE COURT:

    The Defendants Baylor University Board of Regents, Ian McCaw in his official capacity as former athletic director, and Art Briles in his official capacity as former head football coach (collectively "University Defendants") move to dismiss as follows:

### OVERVIEW

    Plaintiff Jasmin Hernandez is a former Baylor University student. Hernandez attended an off-campus party in 2012 and was raped by a fellow student, Tevin Elliot. Elliot was convicted in January 2014 of sexually assaulting Hernandez. *See Elliott v. State of Texas*, 2015 WL 1877052 (Tex. App. – Waco, April 23, 2015, pet. ref'd) (unreported). In this action, Hernandez has sued the Baylor University Board of Regents and the University's former head football coach and former athletic director in their "official capacities," asserting claims of

negligence under state law and claims under Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681.

Although the University condemns Elliot's reprehensible, criminal acts, dismissal is warranted because Hernandez has failed to state a claim for which relief can be granted. In particular, Hernandez has sued non-jural parties that lack the capacity to be sued, and her claims are time-barred on their face. Further, while the University is concerned for the welfare of all of its students, it is well settled that institutions of higher education may not be held liable in damages for criminal acts perpetrated by students against other students at a privately organized, off-campus party unaffiliated with the institution. Because Hernandez has failed to state a claim of legal liability, dismissal of all claims is warranted.

## STANDARD OF REVIEW

To avert dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the plaintiff's complaint must provide sufficient factual allegations that, when assumed to be true, state a claim for relief that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citations omitted). The plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. When a complaint pleads facts that are "merely consistent with" a defendant's liability, "it 'stops short of the line between possibility and plausibility.'" *Id*. (citations omitted). Further, although the court must accept well-pleaded facts as true, conclusory allegations are not entitled to a presumption of truth. *Id.* at 678-79.

## SUMMARY

Plaintiff was raped in April 2012 by a fellow student at an off-campus party. She alleges that she reported the incident to administrators and staff at Baylor University and that no one assisted her. She claims that university employees knew that the male student had assaulted

other women in the past and that the employees failed to act. Although the University denies Plaintiff's version of events, the Defendants recognize that the Court is obligated to assume the truth of Plaintiff's well-pleaded allegations. As shown below, assuming the truth of Plaintiff's allegations, she has failed to state a claim for which relief can be granted.

First, the claims against the "Baylor University Board of Regents" must be dismissed because the Board of Regents is a non-jural entity and lacks the capacity to be sued.

Second, even if the Court were to grant Plaintiff leave to amend to add the real party in interest, granting leave to amend would be a futile act. Plaintiff's claims are, on their face, barred by the statute of limitations. The statute of limitations is two years. Plaintiff's complaint alleges events that occurred nearly four years ago.

Third, Plaintiff's negligence claims fail as a matter of law due to the absence of a legal duty, which is an essential element of a negligence claim. It is the law in Texas and elsewhere that universities do not owe a legal duty to protect students from harm from fellow students that occurs at off-campus events not affiliated with the university.

Finally, the claims against the former head football coach and former athletic director in their official capacities must be dismissed because these officials, like the Board of Regents, lack the capacity to be sued as representatives of Baylor University.[1]

---

[1] This motion to dismiss is not brought on behalf of Briles or McCaw in their individual or personal capacities. Because Plaintiff has sued these former officials only in their "official capacities," Plaintiff has effectively sued the "office" rather than the individual officeholder. The purpose of this motion is to obtain dismissal of the claims against Briles and McCaw as purported representatives of Baylor University. *See* Section II, *supra*, at 16. Briles has filed a separate motion to dismiss on his own behalf (*see* ECF No. 17).

## ARGUMENT AND AUTHORITIES

I. **Claims against the "Baylor University Board of Regents"**

    A. **The claims against the "Baylor University Board of Regents" must be dismissed because the Board of Regents lacks the capacity to be sued.**

Baylor University is a non-profit corporation organized under the laws of the State of Texas. (Exhibit A – certificate of formation.) Plaintiff has sued the "Baylor University Board of Regents" as the "governing body" of Baylor University. Orig. Cmplt., ECF No. 1, p. 1. The Board of Regents, however, is not a legally constituted separate entity and is not subject to suit. Accordingly, Plaintiff's claims must be dismissed for failure to state a claim upon which relief can be granted.

It is well settled that a plaintiff may not sue a subdivision of a corporate entity unless the subdivision enjoys a separate and legal existence. *See Darby v. Pasadena Police Dep't*, 939 F.2d 311, 313-14 (5th Cir. 1991). The capacity of an entity to sue or be sued "shall be determined by the law of the state in which the district court is held." FED. R. CIV. P. 17(b). Under Texas law, a "board of directors" manages the corporation but is not a separate legal entity. *See generally* TEX. BUSINESS ORG. CODE § 22.001(1). A motion to dismiss under federal rule 12(b)(6) is the proper vehicle for dismissal of claims against a non-jural entity. *See Halton v. Duplantis*, 2013 WL 1148758 (S.D. Tex., March 1, 2013) (unreported); *Robles v. Archer Western Contractors LLC*, 2015 WL 4979020 (N.D. Tex., Aug. 19, 2015) (unreported); *Van Minden v. Jankowski*, 2007 WL 1958615 (W.D. Tex., July 3, 2007); *see, e.g.*, *Heslep v. Americans for African Adoption Inc.*, 890 F.Supp.2d 671, 679 (N.D. W.Va. 2012) (dismissing board of directors of non-profit corporation due to lack of capacity to be sued).

Because Plaintiff has sued the "Board of Regents," a non-jural entity, rather than Baylor University, her claims must be dismissed. Moreover, leave to amend is not warranted. Although

a plaintiff who sues the wrong entity may be granted leave to amend to add the proper party, *see Darby*, 939 F.2d at 314-15, in this instance, it would be futile to permit Plaintiff to amend to substitute Baylor University because the proposed claims are time-barred and fail to state a plausible claim for relief.

### B. Plaintiff's Title IX claims are time-barred.

A complaint is subject to dismissal under Rule 12(b)(6) based on limitations when it is evident from the plaintiff's pleadings that the action is barred and there is no basis for tolling. *See Jones v. ALCOA, Inc.*, 339 F.3d 359, 366 (5th Cir. 2003). In this case, Plaintiff's Title IX claims, on their face, are untimely. Accordingly, it would be futile to permit Plaintiff to amend. *See, e.g., Whitt v. Stephens County*, 529 F.3d 278, 282-283 (5th Cir. 2008) (affirming denial of leave to amend to add new defendants due to futility of proposed amendment).

***Overview of the Title IX claim.*** Title IX is a federal statute that prohibits gender discrimination by educational institutions that receive federal funds. *See Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274 (1998). Although the statute itself creates no private right of action, the Supreme Court has implied a right of action, holding that students may sue an educational institution for damages if a school official with authority to take corrective action receives "actual knowledge" of sexual harassment and responds with "deliberate indifference" that subjects the student to "further" harassment. *Davis v. Monroe County Bd. of Educ.*, 526 U.S. 629, 644-645, 648 (1999). Liability is permitted only if the institution exercised "substantial control over both the harasser and the context in which the known harassment occurs." *Id.* at 645. The Supreme Court further cautioned lower courts to "refrain from second-guessing the disciplinary decisions made by school administrators." *Id.* at 648. Applying these standards, courts have held that schools may not be held liable in damages for claims based on

5

off-campus assaults that occurred at events that were not sponsored by, or affiliated with, the university. *See, e.g.*, *Roe v. St. Louis Univ.*, 746 F.3d 874 (8th Cir. 2014) (rejecting claim of a female student athlete who alleged that she was raped at an off-campus fraternity party).

***Statute of limitations.*** The statute of limitations for claims under Title IX is two years. *See A.W. v. Humble Indep. Sch. Dist.*, 803 F.3d 754, 759 (5th Cir. 2015). Because Title IX does not have its own statute of limitations, courts borrow the forum state's personal injury statute of limitations. *Id*. at 760-761, citing *Wilson v. Garcia*, 471 U.S. 261, 266, 278-79 (1985). In Texas, the general personal injury statute of limitations is two years. *See* TEX. CIV. PRAC. & REM CODE § 16.003(a). Hernandez's pleadings, assumed to be true, show that her injury occurred nearly four years ago.

The time of accrual is a question of federal law. *Piotrowski v. City of Houston*, 237 F.3d 567, 576 (5th Cir. 2001). The statute of limitations begins to run when the plaintiff "becomes aware that he has suffered an injury or has sufficient information to know that he has been injured." *Id*. at 576 & n. 11. The plaintiff's awareness encompasses both knowledge of the injury and knowledge of the causal link between the injury and the defendant. *Id.* The plaintiff "need not know the full extent of his injury because it is the discovery of the injury, not all of the elements of the cause of action, that starts the limitations clock." *Doe v. Henderson Indep. Sch. Dist.*, 237 F.3d 631 at *6 (5th Cir. 2000) (unreported) (citation omitted); *see also Bertrand v. Bertrand*, 449 S.W.3d 856, 867 (Tex. App. – Dallas 2014, no pet.) (the relevant inquiry is whether the plaintiff obtained sufficient information "that would have led a reasonable prudent person to make an inquiry that would have led to discovery of a cause of action").

The Fifth Circuit's recent decision in *A.W.* is dispositive of Hernandez's claim. In *A.W.*, the court affirmed the 12(b)(6) dismissal of an untimely claim brought by a student who was

abused by her high school teacher. *A.W.*, 803 F.3d at 763. The court found that the student had obtained sufficient information that would have prompted a reasonable person to investigate further. *Id.* In particular, the court pointed to the student's allegation that her mother's complaints to the school had "gone unheeded." *Id.* Like the plaintiff in *A.W.*, Hernandez alleges that Baylor officials did not respond to her complaints. Orig. Cmplt., ECF No. 1, ¶¶ 40-41, 44.

Similarly, in *Henderson,* the Fifth Circuit rejected the claims of plaintiffs who admitted that they knew the offender's conduct was wrongful when it occurred:

> Although each of the plaintiffs attempted to block out memories of the abuse, none of them forgot what had happened, and each knew that Ward's conduct was wrongful. The plaintiffs also knew that Ward was employed by HISD and the church as that was the context in which they came in contact with Ward. This should have been sufficient knowledge by the plaintiffs that there was nothing left for them to 'discover' for tolling purposes…

*Henderson*, 2000 WL 1701752 at *5.

The salient fact is plaintiff's knowledge of her own assault. In *Samuelson v. Oregon State University*, 2016 WL 727162 (D. Or., Feb. 22, 2016), a freshman was raped in an off-campus apartment. When she reported the rape, university officials allegedly told her that she "should not have been drinking," and they "took no further action." *Id.* at *1. Several years later, while reading the newspaper, the victim learned that, prior to her own rape, another woman had been raped in the same apartment complex. *Id.* at *2. The court held that the Title IX claim was untimely, holding that "she learned of OSU's deliberate indifference to her report of rape" at the time she reported her own rape. *Id*.

Hernandez alleges that the rape occurred on April 15, 2012. Orig. Cmplt., ECF No. 1, ¶¶ 35-36. She alleges that Baylor ignored her report and that she felt "vulnerable" until Tevin Elliott left Baylor in the summer of 2012. *Id.*, ¶¶ 40-41, 44, 45. These allegations, assumed to

be true, demonstrate that Hernandez, in 2012, was fully aware of her injury and Baylor's alleged inaction. Her claim four years later is untimely on its face.

Nor has Hernandez alleged any basis for tolling the statute of limitations. The discovery rule is a limited exception that tolls the statute of limitations when the plaintiff has experienced an injury that is "inherently undiscoverable" within the limitations period and the claim is objectively verifiable. *S.V. v. R.V.*, 933 S.W.2d 1, 6-8 (Tex. 1996). An injury is inherently undiscoverable if it is by nature unlikely to be discovered within the prescribed limitations period despite due diligence. *Id.* at 7. When the discovery rule applies, accrual of the cause of action is deferred until the plaintiff knows, or in the exercise of reasonable diligence, should know of the wrongful act and injury. *See Marshall v. First Baptist Church of Houston*, 949 S.W.2d 504, 507 (Tex. App. – Houston [14th Dist.] 1997, no pet.). Here, Hernandez reported the assault shortly after it happened. Orig. Cmplt., ECF No. 1, ¶¶ 36-39. Knowledge and reporting of sexual abuse "foreclose" the contention that the injury was inherently undiscoverable. *Doe v. St. Stephen's Episcopal Sch.*, 382 Fed. App'x. 386, 389 (5th Cir. 2010) (unreported); *Doe v. Linam*, 225 F.Supp.2d 731, 735 (S.D. Tex. 2002) (declining to apply discovery rule where plaintiff "was aware of Defendants' inaction after his alleged abuse").

The doctrines of fraudulent concealment and equitable estoppel also are inapplicable to toll the statute of limitations. The doctrine of fraudulent concealment applies when a defendant is under a duty to disclose information but fraudulently conceals the existence of a cause of action from the injured party. *See Borderlon v. Peck*, 661 S.W.2d 907, 908 (Tex. 1983) (plaintiff must show a duty to disclose and a fixed purpose to conceal). Similarly, the doctrine of equitable estoppel requires "a false representation or concealment of material facts [and] the party to whom the statement was made must have been without knowledge or means of

8

knowledge of the real facts." *St. Stephen's Episcopal*, 382 Fed. App'x at 390. With both doctrines, the estoppel effect ends when the party learns of facts that would cause a reasonably prudent person to make inquiry that, if pursued, would lead to discovery of the concealed claim. *See Borderlon*, 661 S.W.2d at 908. These doctrines are inapplicable here because Hernandez was aware of her injury, was aware of the University's alleged inaction, and was not deceived into thinking she had not been abused. *See, e.g.*, *St. Stephen's Episcopal Sch.*, 382 Fed. App'x at 390 (doctrine was inapplicable to claims against the school and the headmaster because the victims knew about the abuse when it happened and "had not been deceived into thinking they had not been abused"). Like the plaintiff in the *A.W.* case, the focus of Hernandez's complaint is *failure to act*, not fraud. *See* Orig. Cmplt., ECF No. 1, ¶ 44 ("Baylor did not take any action whatsoever to investigate Hernandez's claim"); *compare with A.W.*, 803 F.3d at 764 (rejecting tolling where plaintiff's allegations focused on the schools' alleged failure to act).

Although Hernandez avers that she did not understand Title IX and that Baylor did not maintain Title IX-compliant policies, the "plaintiff need not know that a legal cause of action exists; he need only know facts that would support a claim." *Henderson*, 237 F.3d at *7. Hernandez's allegations show that she had sufficient knowledge that would have prompted a reasonable person to make further inquiry. *See generally Henderson*, 237 F.3d 631 at *7 ("Although the plaintiffs argue that they were ignorant of the defendants' concealment, they were painfully aware of the abuse by Ward"); *St. Stephen's*, 382 Fed. App'x at 390 (rejecting equitable estoppel because plaintiffs knew about their own abuse); *Linam*, 225 F.Supp.2d at 737 (no tolling, despite alleged cover-up, because plaintiff was aware of his own abuse). The allegations in the Original Complaint demonstrate that Hernandez's claims are time-barred as a matter of law.

### C. As a matter of law, the Plaintiff may not sue for damages for a violation of federal regulations or administrative guidance.

Hernandez attempts to assert a claim for damages based on Baylor's alleged failure to comply with regulatory and administrative guidance published by the U.S. Department of Education. *See* Orig. Cmplt., ECF No. 1, ¶ 48, 51-52, 59. In particular, she cites a "Dear Colleague Letter" published by the U.S. Department of Education that provides recommendations for schools regarding sexual assault policies, prevention, and investigation.[2] Plaintiff's allegations regarding alleged non-compliance with federal regulations and administrative guidance fail to state a plausible claim for relief. The Supreme Court has held that regulatory non-compliance is not actionable in damages.

Title IX was enacted by Congress pursuant to its authority under the Spending Clause of the U.S. Constitution. *See Gebser*, 524 U.S. at 286. In exchange for federal funds, the recipient institution agrees not to use the funds in a discriminatory manner. *Id*. The only express statutory remedy for a violation is termination of funding. *Id.* at 289-290. The federal government is authorized to investigate and commence administrative proceedings if the institution refuses to remedy violations. 20 U.S.C. § 1682. When conducting these administrative investigations, the Department of Education employs a negligence standard. *See* 2011 DCL, p. 4.

In litigation, however, the negligence standard does not apply. *Gebser*, 524 U.S. at 288-291 (rejecting negligence and constructive notice standards). Damages are available only for acts of "intentional" discrimination against students. *Id*. at 281. Non-compliance with administrative requirements "does not itself constitute 'discrimination' under Title IX" and is not actionable in damages. *Id*. at 292. Because a damages claim requires proof of actual knowledge of, and deliberate indifference to, specific acts of harassment, a university's failure to comply

---

[2] *See* U.S. Dep't of Educ., Office for Civil Rights, Dear Colleague Letter: Sexual Violence (April 4, 2011) (available at www.ed.gov/ocr/letters/colleagues-201104.pdf) [hereinafter "2011 DCL"].

with an administrative regulation does not establish these elements. *See id.* at 291-292; *see, e.g., Moore v. Regents of Univ. of Calif.*, 2016 WL 2961984 (N.D. Calif., May 23, 2016) ("There is no private right of action to recover damages under Title IX for violations of DOE's administrative requirements, much less the provisions of the DCL and Q&As…."); *Karasek v. Regents of the Univ. of Calif.*, 2015 WL 8527338 at 13-14 (N.D. Cal., Dec. 11, 2015) (holding that university's failure to comply with Dear Colleague Letter was not "deliberate indifference" under *Gebser*). The 2011 DCL itself expressly rules out any suggestion that its requirements may be used to support a damages claim. *See* 2011 DCL, p. 4 & n. 12 (stating that the DCL standards do not apply to "private lawsuits for monetary damages"). As a matter of law, Hernandez's allegations regarding non-compliance with federal administrative requirements fail to state a plausible claim for damages under *Davis* and *Gebser*.

> D.   **Plaintiff's negligence claims should be dismissed because the claims are time-barred and because, as a matter of law, there was no breach of any legal duty owed to the Plaintiff.**

In addition to asserting a claim under Title IX, Hernandez has asserted common law claims for negligence. These claims likewise are subject to dismissal.

*__Claim is untimely.__* As previously noted, the statute of limitations for personal injury claims is two years. TEX. CIV. PRAC. & REM CODE 16.003(a). Therefore, Hernandez's tort claims based on events in 2012 are time-barred. *See, e.g., Doe v. Linam*, 225 F.Supp.2d 731 (S.D. Tex. 2002) (applying two-year rule to assault victim's claims of negligence and intentional infliction of emotional distress against non-perpetrator); *Twist v. Lara*, 2007 WL 2088363 (S.D. Tex. 2007) (applying two-year rule to assault victim's intentional infliction of emotional distress claim against non-perpetrator) (unreported).

Although Texas has adopted a five-year statute of limitations for "sexual assault" personal injury claims, *see* TEX. CIV. PRAC. & REM CODE 16.0045(a), its reach against non-perpetrators is circumscribed. *See generally Doe v. St. Stephen's Episcopal Sch.*, 382 Fed. App'x. 386, 390 n. 3 (5th Cir. 2010) and *Doe v. St. Stephen's Episcopal Sch.*, 2008 WL 4861566 (S.D. Tex., Nov. 4, 2008) (in suit involving molestation of children by a priest, applying two-year statute of limitations to negligence and negligent misrepresentation claims and five-year statute of limitations to vicarious liability claim); *see also Linam*, 225 F.Supp.2d at 734; *Twist*, 2007 WL 2088363 at *4.

Although the five-year rule has been applied to non-perpetrators in direct liability and vicarious liability situations, such cases have involved perpetrators who were employed by the institution. *See, e.g., St. Stephen's Episcopal Sch.*, 382 Fed. App'x. at 388 (applying five-year limitations rule to vicarious liability claim based on assault of a child by a priest) (unreported); *C.R. v. American Institute for Foreign Study, Inc.*, 2013 WL 5157699 at *6 (W.D. Tex. 2013) (applying the five-year limitations rule to a negligence claim against a summer camp that hired a counselor who molested a child) (unreported). In this case, the perpetrator, Tevin Elliott, was not a university employee, and the assault did not occur on the university's premises. Plaintiff's claims and theories sound in general negligence and thus are subject to the two-year statute of limitations.

***No legally recognized duty was breached.*** Plaintiff asserts a negligence claim based on the University's alleged failure to protect her from Tevin Elliot and its alleged failure to assist her after the assault. She claims that she had a "special relationship" with Baylor University that gave rise to a duty to protect. Orig. Cmplt., ECF No. 1, ¶¶ 62-65. Even if this claim were not time-barred, Plaintiff has failed to state a plausible claim for which relief can be granted. It is

well settled in Texas – and across the country – that a university does not owe a legal duty to protect or control students during private, off-campus activities.

To establish a cause of action for negligence, the plaintiff must show the existence of a legal duty owed by the defendant to the plaintiff, a breach of that duty, and damages that were proximately caused by the breach of that duty. *See Nabors Drilling, USA Inc. v. Escoto*, 288 S.W.3d 401, 404 (Tex. 2009). The existence of duty is a question of law for the court to decide from the facts surrounding the occurrence in question. *See Centeq Realty, Inc., v. Siegler,* 899 S.W.2d 195, 197 (Tex.1995); *Bird v. W.C.W.,* 868 S.W.2d 767, 769 (Tex.1994). If there is no duty, then there is no liability, and the claim fails. *See Boyd v. Texas Christian Univ.*, 8 S.W.3d 758 (Tex. App. – Fort Worth 1999, no pet.).

"[C]ourts with good reason have been unwilling to shift moral and legal responsibility away from student perpetrators" to colleges and universities. *Tanja H. v. Regents of the Univ. of Calif.*, 228 Cal.App.3d 434 (1991) (collecting cases); *see generally Guest v. Hansen*, 603 F.3d 15, 17 (2d Cir. 2010) ("colleges have no legal duty to shield students or their guests from the harmful off-campus activity of other students" even if school officials as a practical matter could have exercised control); *Freeman v. Busch*, 349 F.3d 582, 587-588 (8th Cir. 2003) ("since the late 1970s," the general rule is that no special relationship exists between a college and its students); *University of Delaware v. Whitlock*, 744 P.2d 54, 60-61 (Colo. 1987) (handbook regulations on student conduct did not give rise to special duty to protect students); *Rabel v. Illinois Wesleyan Univ.*, 514 N.E.2d 552, 560-561 (Ill. App. Ct. 4th Dist. 1987) ("Imposing such a duty of protection would place the university in the position of an insurer of the safety of its students"); *Bradshaw v. Rawlings*, 612 F.2d 135, 138-140 (3d Cir. 1979) (the application of *in loco parentis* to university students no longer exists).

Rejection of *in loco parentis* as applied to university students is a result "of changes in society's perception of the most beneficial allocation of rights and responsibilities in the university-student relationship." *Whitlock*, 744 P.2d at 60. Courts "have not been willing to require college administrators to reinstitute curfews, bed checks, dormitory searches, hall monitors, chaperones, and the other concomitant measures which would be necessary" to protect students from each other. *Tanja H.*, 228 Cal.App.3d at 438. Thus, even if it were foreseeable that football players "could rape a fellow student after a party where alcohol was served," courts have been unwilling to make colleges liable for damages caused by third parties because the trade-off would be onerous restrictions on the freedom and privacy of students. *Id*.

Thus, in *Boyd*, the court rejected the personal injury claims of a Texas Christian University student who was "seriously injured" during an off-campus altercation with four TCU football players. *Boyd*, 8 S.W.3d at 759. The university did not organize or sponsor the event and did not control the premises. The student alleged that the university was negligent in failing to properly supervise, control, or discipline the athletes and in failing to provide a safe environment for the plaintiff. The court of appeals rejected the claim, finding that the university owed no duty to provide a safe environment at an off-campus event not organized by the university. *Id.* at 760. Courts have reached the same conclusion in cases involving off-campus and even some on-campus injuries.[3]

---

[3] *See, e.g., Pawlowski v. Delta Sigma Phi*, 2009 WL 415667, 47 Conn. L. Rptr. 132 (Sup. Ct. Conn., Jan. 23, 2009) (unreported) (holding that university did not have a duty to protect an intoxicated student at an off-campus fraternity party despite allegation that university had previously warned fraternity about underage drinking); *Bradshaw v. Rawlings*, 612 F.2d 135, 138-140 (3d Cir. 1979) (holding that college was not responsible for student injury at class picnic; the time in which colleges and universities "assumed a role in loco parentis" no longer exists); *Tanja H. v. Regents of the Univ. of Calif.*, 228 Cal.App.3d 434, 437-438 (1991) (rejecting claim of student who was raped in her dorm following a party where alcohol was served to underage students); *Rabel*, 514 N.E.2d at 560-561 (rejecting claim of student who was physically removed from her dorm and injured by a drunken fraternity member).

Nor is this a situation in which the University took actions that rendered Hernandez personally more vulnerable to sexual assault by, for example, isolating her with Elliott. The requirement of affirmative action means that the defendant actually exercised control over the plaintiff and placed her in a more vulnerable position. *See generally* RESTATEMENT (SECOND) OF TORTS § 323 and § 314. Knowledge that another person needs assistance is insufficient to impose a legal duty. *See Carter v. Abbyad*, 299 S.W.3d 892, 895-896 (Tex. App. – Austin 2009, no pet.). Thus, in *Freeman v. Busch*, 349 F.3d 582, 587-588 (8th Cir. 2003), the court rejected the claim of a young woman who was raped after passing out in a dorm after becoming drunk. The court rejected the claims against the college despite evidence that a resident assistant knew that the woman had passed out. Although the resident assistant asked a student to monitor the woman's condition, he "took no specific action to exercise control or custody" over her and, thus, "had no legal duty to come to her aid." *Id*. at 587-588.

In Hernandez's case, there are no allegations that the University constrained Hernandez's choices, placed her at the party with Elliott, or promised to protect her at the party and then failed to do so. Furthermore, even if there had been grounds to suspend Elliott prior to April 15, 2012, as alleged by Hernandez, suspension from school would not have prevented him from attending a private party in Waco or anywhere else. Because the University did not breach any common law duty to protect, the negligence claim fails as a matter of law.

    E.    **Punitive damages are not allowed under Title IX**

Hernandez seeks punitive damages under Title IX, but these are not recoverable as a matter of law. *See Mercer v. Duke Univ.*, 50 Fed. App'x 643 (4th Cir., Nov. 15, 2002) (unreported), citing *Barnes v. Gorman*, 536 U.S. 181 (2002). Accordingly, Defendant moves to dismiss any claims for punitive damages under Title IX.

**II.      Claims Against Art Briles and Ian McCaw**

As previously noted, Hernandez purports to sue Briles and McCaw in their "official capacity" based on their previous positions at the University. Orig. Cmplt., ECF No. 1, p. 1. Briles is the former head football coach at Baylor, and McCaw is the former athletic director. *Id*. Hernandez avers that Briles and McCaw were "agents" of the University who were "acting within the course and scope of their employment at all times." Orig. Cmplt., ECF No. 1, ¶ 64.

As discussed above in Section I(A), Baylor University is a private, non-profit corporation. Just as the University cannot be sued by or through its board of regents, it cannot be sued by or through employees who are *subordinate* to the board of regents. Briles and McCaw do not have the capacity to sue or be sued on behalf of the University, and none of Plaintiff's facts suggest otherwise. Plaintiff's problems are compounded by the fact that Briles and McCaw no longer serve as head football coach or athletic director.

Moreover, the inclusion of duplicative defendants adds nothing but cost and inconvenience. In the analogous context of suits against public officials, the Supreme Court has explained that "official capacity" is simply another way of pleading a claim against the entity that employs the official. *See Kentucky v. Graham*, 473 U.S. 159, 165-166 (1985). An "official-capacity suit is, in all respects other than name, to be treated as a suit against the entity" and "*not* a suit against the official personally, for the real party in interest is the entity." *Id.* (emphasis in original). Federal courts routinely dismiss "official capacity" suits on the ground that they are redundant and unnecessary. *See, e.g., Madrid v. Anthony*, 510 F.Supp.2d 425, 427 n. 2 (S.D. Tex. 2007); *Rascon v. Austin Indep. Sch. Dist.*, 2006 WL 2045733 at 3 (W.D. Tex., July 18, 2006) (unreported); *Jenkins v. Board of Educ.*, 937 F.Supp. 608, 613 (S.D. Tex. 1996).

Finally, because the "official capacity" claims are the functional equivalent of claims against the institution, the officials would be entitled to the same defenses as the institution, including the statute of limitations. Accordingly, these Defendants incorporate by reference the arguments in Section I of this motion.

In sum, naming individual employees as purported representatives of a corporation is improper when those individuals lack jural authority. The real party in interest is the University, which has not been sued. These claims should be dismissed.

### V.  CONCLUSION

For the foregoing reasons, the University Defendants pray that the Court will grant this motion and dismiss Plaintiff's claims.

Respectfully submitted,

**THOMPSON & HORTON LLP**

By: ___/s/ *Lisa A. Brown*___
Lisa A. Brown
State Bar of Texas No. 03151470
Phoenix Tower, Suite 2000
3200 Southwest Freeway
Houston, Texas  77027-7554
(713) 554-6741 (telephone)
lbrown@thompsonhorton.com (email)

**COUNSEL FOR DEFENDANTS BAYLOR UNIVERSITY BOARD OF REGENTS, IAN MCCAW IN HIS OFFICIAL CAPACITY AS FORMER ATHLETIC DIRECTOR, AND ART BRILES IN HIS OFFICIAL CAPACITY AS FORMER HEAD FOOTBALL COACH**

## **CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing pleading was served upon all counsel of record on July 8, 2016, via the Court's ECF/CMF electronic service system as follows:

Ms. Susan Hutchison
Hutchison & Stoy PLLC
509 Pecan Street, Suite 201
Fort Worth, Texas 76102
hutch@hsjustice.com

Mr. Alexander S. Zalkin
The Zalkin Law Firm, P.C.
12444 High Bluff Drive, Suite 301
San Diego, California 92130
alex@zalkin.com

Mr. David Tekell
Tekell & Atkins, L.L.P.
P.O. Box 23248
Waco, Texas 76710-3248
600 Central Tower
5400 Bosque Boulevard
Waco, Texas 76710
david@tekellatkins.com

*Lisa A. Brown*
Lisa A. Brown

795879
094030.000002