# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
### Waco Division

JASMIN HERNANDEZ;

      Plaintiff,

v.

BAYLOR UNIVERSITY BOARD OF
REGENTS; ART BRILES, in his official
capacity as head football coach; IAN
MCCAW, in his official capacity as
athletic director;

      Defendants.

§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§

Case No.: 6:16-cv-00069-RP

Hon. Robert Pitman

# PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS OF DEFENDANT BAYLOR UNIVERSITY BOARD OF REGENTS AND DEFENDANTS IAN MCCAW AND ART BRILES IN THEIR OFFICIAL CAPACITIES

# TABLE OF CONTENTS

I.     INTRODUCTION AND ISSUES PRESENTED................................ 1

II.    STANDARD FOR RULE 12(B)(6) MOTION TO DISMISS................. 1

III.   BAYLOR IS LIABLE UNDER TITLE IX BASED ON ITS
       PRE-ASSAULT CONDUCT, POST-ASSAULT CONDUCT, AND
       GENERAL POLICY OF INDIFFERENCE TO REPORTS OF
       SEXUAL VIOLENCE.................................................... 2

       A. BAYLOR'S POST-ASSAULT CONDUCT SUPPORTS A FINDING
          OF LIABILITY UNDER TITLE IX........................................ 3

       B. BAYLOR'S PRE-ASSUALT CONDUCT SUPPORTS A FINDING
          OF LIABILTY UNDER TITLE IX........................................ 3

       C. BAYLOR'S POLICY OF INDIFFERENCE AND INTENTIONAL
          VIOLATION OF TITLE IX SUPPORT A FINDING OF LIABILITY
          UNDER TITLE IX................................................... 5

IV.    PLAINTIFF'S TITLE IX CLAIMS ARE TIMELY BECAUSE SHE HAS
       ALLEGED FACTS THAT SUPPORT SEVERAL STATUTE OF
       LIMITATION DEFENSES.................................................. 7

       A. JASMIN'S CLAIM DID NOT ACCRUE UNTIL EARLY 2016......... 9

       B. THE STATUTE OF LIMITATIONS APPLICABLE TO
          PLAINTIFF'S TITLE IX CLAIM IS TOLLED AND/OR BAYLOR
          IS ESTOPPED FROM ASSERTING A STATUTE OF
          LIMITATIONS DEFENSE.............................................. 10

          i.    THE "FRAUDULENT CONCEALMENT" DOCTRINE
                TOLLED THE RUNNING OF PLAINTIFF'S STATUTE
                OF LIMITATIONS.............................................. 11

          ii.   DEFENDANT IS ESTOPPED FROM ASSERTING A
                STATUTE OF LIMITATIONS DEFENSE.......................... 14

V.     PLAINTIFF'S ALLEGATIONS REGARDING THE DEPARTMENT
       OF EDUCATION'S ADMINISTRATIVE REQUIREMENTS ARE
       PROPER EVIDENCE OF A REASONABLE RESPONSE TO
       SEXUAL MISCONDUCT................................................. 16

VI.    PUNITIVE DAMAGES ARE AVAILABLE IN PRIVATE TITLE IX
       ACTION.............................................................. 20

i

**TABLE OF CONTENTS**
**(Continued)**

Page(s)

VII.  PLAINTIFF HAS ALLEGED VIABLE STATE LAW CLAIMS……..... 21

A.  JASMIN'S STATE LAW CLAIMS WERE TIMELY COMMENCED… 21

B.  BAYLOR OWED EXTENSIVE DUTIES TO JASMIN………………. 23

C.  JASMIN'S IIED CAUSE OF ACTION HAS BEEN PROPERLY PLED.. 28

D.  JASMIN'S OFFICAL CAPACITY CLAIMS…………………………….. 30

VIII.  CONCLUSION……………………………………………………………. 30

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*Canty v. Old Rochester Regl. Sch. Dist.*,
54 F. Supp. 2d 66 (D. Mass. 1999)................................................. 20

*Davis Next Friend LaShonda D. v. Monroe Cnty. Bd. of Educ.*,
526 U.S. 629 (1999) ............................................... ............passim.

*Doe v. E. Haven Bd. of Educ.*,
200 Fed. Appx. 46 (2d Cir. 2006)..................................................... 3

*Doe v. Forest Hills Sch. Dist.*,
2015 WL 9906260 (W.D. Mich. Mar. 31, 2015)................................ 17

*Doe v. Oyster River Co-op. Sch. Dist.*,
992 F. Supp. 467 (D.N.H. 1997)... ... ... ... ... ... ... ... ... ... ... ... ... 3, 20

*Doe v. Sch. Admin. Dist. No. 19*,
66 F. Supp. 2d 57 (D. Me. 1999)..................................................... 3

*Doe v. U. of Tennessee*,
2016 WL 2595795 (M.D. Tenn. May 3, 2016)................................. 4, 5

*Franklin v. Gwinnett County Pub. Schools*,
503 U.S. 60 (1992)................................................................. 2, 20

*Gebser v. Lago Vista Indep. Sch. Dist.*,
524 U.S. 274 (1998)............................................................... 6, 18,

*Glus v. Brooklyn E. Dist. Terminal*,
359 U.S. 231 (1959).................................................................. 15

*Golden Spread Council, Inc. No 562 of Boy Scouts of America v. Akins*,
926 S.W.2d 287 (Tex. 1996)....................................................... 24

*Hansen v. Bd. of Trustees of Hamilton S.E. Sch. Corp.*,
551 F.3d 599 (7th Cir. 2008)........................................................ 8

*Hardin v. Straub*,
490 U.S. 536 (1989)................................................................. 10

*Hickok Producing & Dev. Co. v. Texas Co.*,
128 F.2d 183 (5th Cir. 1942)....................................................... 11

*Hoffmann–La Roche, Inc. v. Zeltwanger*,
144 S.W.3d 438 (Tex.2004)........................................................ 28

*In re Air Crash Disaster at John F. Kennedy Intern. Airport on June 24, 1975*,
635 F.2d 67 (2d Cir. 1980)......................................................... 19

*Jablon v. Dean Witter & Co.*,
614 F.2d 677 (9th Cir. 1980).................................................... 10

*Jackson v. Birmingham Bd. of Educ.*,
544 U.S. 167 (2005)........................................................... 2

*Johnson v. State of Cal.*,
207 F.3d 650 (9th Cir. 2000) ................................................ 2

*Johnson & Higgins of Texas, Inc. v. Kenneco Energy, Inc.*,
962 S.W.2d 507 (Tex. 1998)................................................ 14, 28

*KPMG Peat Marwick v. Harrison County Hous. Fin. Corp.*,
988 S.W.2d 746 (Tex. 1999)................................................ 11

*Kelly v. Yale U.*,
2003 WL 1563424 (D. Conn. Mar. 26, 2003)................................... 3

*King-White v. Humble Indep. Sch. Dist.*,
803 F.3d 754 (5th Cir. 2015)................................................ 8, 9, 10

*Lipsett v. U. of Puerto Rico*,
864 F.2d 881 (1st Cir. 1988)................................................ 17

*Lopez v. Regents of U. of California*,
5 F. Supp. 3d 1106 (N.D. Cal. 2013)........................................ 17

*Lormand v. US Unwired, Inc.*,
565 F.3d 228 (5th Cir. 2009)................................................ 2

*McLain v. Real Est. Bd. of New Orleans, Inc.*,
444 U.S. 232 (1980).......................................................... 1

*Meritor Sav. Bank, FSB v. Vinson*,
477 U.S. 57 (1986)............................................................ 16, 17

*Muncie Aviation Corp. v. Party Doll Fleet, Inc.*,
519 F.2d 1178 (5th Cir. 1975)................................................ 19

*North Haven Bd. of Educ. v. Bell*,
456 U.S. 512 (1982)........................................................... 2, 15

*Off. of Atty. Gen. of Texas v. Scholer*,
403 S.W.3d 859 (Tex. 2013)................................................. 14

*Roberts v. Haltom City*,
543 S.W.2d 75 (Tex. 1976)................................................... 14

*Shell Oil Co. v. Ross*,
356 S.W.3d 924 (Tex. 2011)................................................. 11

*Simpson v. Univ. of Colo. Boulder,*
  500 F.3d 1170 (10th Cir.2007) ………………………………............. 3, 4, 5

*Standard Fruit and Vegetable Co., Inc. v. Johnson,*
  985 S.W.2d 62 (1998)…………………………………………………. 28

*Stanley v. U.S.,*
  347 F. Supp. 1088 (D. Me. 1972)………………………………………... 19

*Wallner v. Kitchens of Sara Lee, Inc.,*
  419 F.2d 1028 (7th Cir. 1969)…………………………………………… 19

*Williams v. United Pentecostal Church Intern.,*
  115 S.W.3d 612 (Tex.App. – Beaumont 2013……………………………. 24

*Williams v. Bd. Of Regents of U. System of Georgia,*
  477 F.3d 1282 (11th Cir. 2007) …………………………………….......... 3, 4

*Wills v. Brown U.,*
  184 F.3d 20 (1st Cir. 1999)…………………………………………........ 8

*Zimmerman v. Poly Prep Country Day Sch.,*
  888 F. Supp. 2d 317 (E.D.N.Y. 2012)………………………………….… 15

**STATUTES AND REGULATIONS**

34 C.F.R. § 106.8……………………………………………………… 6

34 C.F.R § 106.8(b)…………………………………………………….. 18

34 C.F.R. § 106.9(a)……………………………………………………. 18

20 U.S.C. § 1092(f)…………………………………………………….. 12

20 U.S.C. § 1232(g)…………………………………………..………… 10

20 U.S.C.A. § 1681……………………………………………………... 7

**OTHER AUTHORITIES**

Office for Civil Rights, Office for Civil Rights, Dep't of Education, Dear
Colleague Letter: Sexual Violence (Apr. 4, 2011) (available at
http://www.ed.gov/ocr/letters/colleague-201104.pdf) ………………….……… 17, 18, 21

# I.    INTRODUCTION AND ISSUES PRESENTED

This case arises out of the rape of Plaintiff Jasmin Hernandez by Tevin Elliot, a Baylor football player, while both were students at Baylor University. Jasmin has filed a First Amended Complaint ("FAC"), alleging causes of action against Defendant Baylor University ("Baylor") for Negligence and violation of Title IX of the Educational Amendments of 1972 ("Title IX"). Jasmin also asserts a Negligence cause of action against Defendant Art Briles, Baylor's former head football coach and Defendant Ian McCaw, Baylor's former athletic director. In response to Jasmin's FAC, Defendants have filed a Rule 12(b)(6) Motion to Dismiss Plaintiff's FAC ("Motion to Dismiss"). Defendant's Motion presents the following issues: (1) Can an educational institution assert a statute of limitations defense to a victim's Title IX claim where it actively concealed information relevant to a victim's assertion of her Title IX rights, and affirmatively misled the victim into believing it had no responsibility for responding to her rape, and (2) Does an educational institution, a head football coach and/or an athletic director, owe a duty to control, or prevent the criminal acts of one of its football players, when they have knowledge of several instances of prior sexual misconduct committed by the football player?

As discussed in detail below, when read with the required liberality, the facts alleged, and reasonable inferences drawn from Jasmin's FAC support several defenses to Defendant's assertion of a statute of limitations affirmative defense. Further, these same facts and inferences support the imposition of several duties on each of the Defendants to have taken reasonable action to have prevented Elliot from raping Jasmin. Finally, to the extent this Court finds Jasmin's other theories of liability deficient, Jasmin's FAC supports a finding of liability for Defendants' Intentional Infliction of Emotional Distress.

# II.    STANDARD FOR A RULE 12(B)(6) MOTION TO DISMISS

"It is axiomatic that a complaint should not be dismissed unless 'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *McLain v. Real Est. Bd. of New Orleans, Inc.*, 444 U.S. 232, 246 (1980) *quoting Conley v. Gibson*, 355 U.S. 41, 45–46 (1957). Further, "[m]otions to dismiss under Rule 12(b)(6) are

viewed with disfavor and are rarely granted. *Lormand v. US Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir. 2009) (internal quotations omitted).

With respect to Title IX, the Supreme Court has recognized that, "[t]he statute is broadly worded." *Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167, 179 (2005). Hence, "[t]here is no doubt that 'if we are to give [Title IX] the scope that its origins dictate, we must accord it a sweep as broad as its language.'" *North Haven Bd. of Educ. v. Bell*, 456 U.S. 512, 521 (1982) (quoting *United States v. Price*, 383 U.S. 787, 801 (1966). Further, "[d]iscrimination is a term that covers a wide range of intentional unequal treatment; by using such a broad term, Congress gave the statute a broad reach." *Jackson*, 544 U.S. at 175 (internal quotations omitted.)

"Congress enacted Title IX not only to prevent the use of federal dollars to support discriminatory practices, but also to provide individual citizens effective protection against those practices." *Jackson*, 544 U.S. at 180 (internal quotations omitted.) "Congress surely did not intend for federal moneys to be expended to support the intentional actions it sought by statute to proscribe." *Franklin v. Gwinnett County Pub. Schools*, 503 U.S. 60, 75 (1992).

### III.     BAYLOR IS LIABLE UNDER TITLE IX BASED ON ITS PRE-ASSAULT CONDUCT, POST-ASSAULT CONDUCT, AND GENERAL POLICY OF INDIFFERENCE TO REPORTS OF SEXUAL VIOLENCE

In order for an educational institution to be held liable under Title IX, a plaintiff must prove: (1) the educational institution is the recipient of federal funding, (2) the institution acted with deliberate indifference, (3) to sexual harassment/assault of which they had actual knowledge, (4) that is so severe, pervasive and objectively offensive so as to deprive the victim of access to the educational opportunities and/or benefits provided by the school. *Davis,* 526 U.S. at 650. Jasmin offers the following analysis as a foundation for her response to Baylor's statute of limitations defenses outlined in detail below. Specifically, Jasmin's FAC supports a finding of liability under Title IX based on (1) Baylor's deliberate indifference after Jasmin's rape, (2) Baylor's pre-assault deliberate indifference to sexual misconduct committed by its football players, and (3) Baylor's general policy of indifference and intentional violation of Title IX.

2

### A. Baylor's Post-Assault Conduct Supports A Finding Of Liability Under Title IX

An institution acts with "deliberate indifference" when it's response to known sexual harassment or sexual assault is "...clearly unreasonable in light of the known circumstances." *Davis Next Friend LaShonda D. v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 648 (1999). Several courts have opined as to what conduct amounts to post-assault deliberate indifference. *See Kelly v. Yale U.*, 2003 WL 1563424 (D. Conn. Mar. 26, 2003) (finding deliberate indifference where school engaged in a prompt grievance procedure but failed to provide reasonable accommodations to the victim); *Williams v. Bd. of Regents of Univ. Sys. of Georgia*, 477 F.3d 1282, 1297 (11th Cir. 2007) (recognizing an eleven-month delay in concluding an investigatory process was clearly unreasonable); *Doe v. E. Haven Bd. of Educ.*, 200 Fed. Appx. 46 (2d Cir. 2006) (recognizing that a five-week delay in addressing report of sexual assault supported a finding of deliberate indifference); *Doe v. Sch. Admin. Dist. No. 19*, 66 F. Supp. 2d 57 (D. Me. 1999); *Doe v. Oyster River Co-op. Sch. Dist.*, 992 F. Supp. 467 (D.N.H. 1997)

Unlike these cases, here, Jasmin alleges that Baylor took *no* action in response to her report that she had been raped by Elliot. Jasmin alleges that she sought academic accommodations and mental health care at the student health care center, both of which were denied. Even worse, when seeking academic accommodations for her daughter, a Baylor employee told Jasmin's mother that, "if a plane falls on your daughter, there's nothing we can do to help you."

Surely, affirmatively misrepresenting that it could take no action, and actually taking no action, in response to Jasmin's report that she had been raped is "clearly unreasonable" in light of any circumstances. Thus, Jasmin's FAC supports a finding of liability under Title IX for Baylor's post-assault response to Jasmin's report that she was raped by Elliot.

### B. Baylor's Pre-Assault Conduct Supports A Finding Of Liability Under Title IX

Title IX liability can be based on institutional behavior that predates the sexual assault. *Williams v. Bd. of Regents of U. System of Georgia*, 477 F.3d 1282 (11th Cir. 2007); *Simpson v. U. of Colorado Boulder*, 500 F.3d 1170 (10th Cir. 2007). An educational institution acts with deliberate indifference when it admits a student-athlete with knowledge of that athlete's prior

sexual misconduct, and fails to adequately supervise him. *Williams,* 477 F.3d. 1282. In *Williams,* the plaintiff was raped by several players on the University of Georgia's ("UGA") men's basketball team. *Id.* at 1288. One player, Tony Cole, was recruited by the basketball coach and admitted through a special admissions process, despite the coaching staff's knowledge that Cole engaged in sexual misconduct prior to attending UGA. *Id.* at 1296. The court held that UGA demonstrated deliberate indifference, prior to the plaintiff's sexual assault, in part, because it failed to adequately supervise Cole despite its knowledge of his past sexual misconduct. *Id.*

An educational institution also acts with deliberate indifference when it fails to adequately respond to a known problem of sexual violence within its football program. *Simpson,* 500 F.3d 1170; *see also Doe v. U. of Tennessee,* 2016 WL 2595795 (M.D. Tenn. May 3, 2016). In *Simpson,* two female students were sexually assaulted by members of the school's football team, and non-student football recruits at an off-campus party. *Id.* at 1173. The court found a school's policies which have the effect to promote the possibility of sexual violence, their inaction in the face of knowledge that sexual violence is prevalent, and/or their inaction despite actual knowledge of sexual assaults that have occurred, amounts to deliberate indifference within the meaning of Title IX. *Id.* at 1184. The court also found the risk in *Simpson* was obvious because the school had general knowledge of the substantial risk of sexual assaults occurring during recruiting trips, the school specifically knew that sexual assaults had occurred during prior recruiting visits, and the school nevertheless maintained policies and procedures that proved ineffective and inadequate in deterring sexual violence during recruiting efforts. *Id.* at 1184.

Here, Baylor has violated Title IX based on its pre-assault conduct of maintaining Elliot as an unrestricted student in good standing, and by failing to respond adequately to a known problem of sexual misconduct by its football players. As in *Williams,* Jasmin alleges that Baylor, Briles and McCaw had actual knowledge that Elliot had sexually assaulted six female students and was convicted of a misdemeanor sexual assault prior to assaulting Jasmin, yet failed to do anything to prevent him from continuing to assault female students. (FAC ¶ 28, 30.)

And, Jasmin identified three other incidents of sexual violence committed by Baylor football players, including a gang rape of one female student prior to Jasmin's rape, that were known to Baylor, and to which Baylor responded with deliberate indifference. (FAC ¶¶ 33-43.) Further, Jasmin alleged that in May of 2016, Pepper Hamilton, commissioned by Baylor to investigate its handling of sexual misconduct, concluded with respect to the football program that:

> In addition to broader University failings, Pepper found specific failings within both the football program and Athletics Department leadership, including a failure to identify and respond to a pattern of sexual violence by a football player, to take action in response to reports of a sexual assault by multiple football players, and to take action in response to a report of dating violence. Pepper's findings also reflect significant concerns about the tone and culture within Baylor's football program as it relates to accountability for all forms of athlete misconduct.

(FAC ¶ 49.) Further evidence is found in Jasmin's FAC which provides a more complete summary of Pepper Hamilton's conclusions. *See* (FAC ¶ 52.)

As in *Simpson* and *U. of Tennessee*, here too, Jasmin's allegations support a finding of deliberate indifference based on Baylor's conduct prior to Jasmin's rape. Jasmin's allegations clearly evidence that Baylor knew it had an out-of-control football program in which (1) football players were sexually assaulting females (FAC ¶¶ 28, 32, 33-43, 49, 52), (2) coaching staff and athletic department personnel actively covered up these assaults (FAC ¶¶ 49, 52), (3) coaching staff and athletic department personnel failed to take any action to control, or otherwise prevent Baylor football players from committing further sexual assaults (*Id.*), (4) the situation was so bad that other Baylor departments complained to Baylor about football players' conduct, which Baylor ignored (FAC ¶ 52), and (5) Baylor football players were given preferential treatment with respect to disciplinary procedures (*Id.*). Therefore, Jasmin has alleged sufficient facts to support a finding of Title IX liability based on Baylor's pre-assault conduct.

C. Baylor's Policy Of Indifference And Intentional Violation Of Title IX Support A Finding Of Liability Under Title IX

An educational institution's intentional violation of Title IX can form the basis of liability under Title IX, even absent actual knowledge of and deliberate indifference to a specific report of sexual misconduct. *See Davis*, 526 U.S. at 642 (the actual notice requirement, "...is not a bar

to liability where a funding recipient intentionally violates the statute"); *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 290 (1998) ("...in cases like this one *that do not involve official policy of the recipient entity*, we hold that a damages remedy will not lie under Title IX..." absent an institution's actual notice of sexual misconduct) (emphasis added).

Here, at the time of the conduct alleged in Jasmin's Complaint, Baylor exhibited a policy of indifference. The Finding of Fact concluded that:

> Prior to the 2014-2015 academic year, Baylor failed to provide training and education to students; failed to identify and train responsible employees under Title IX; failed to provide clear information about reporting options and resources on campus; failed to have a centralized process for ensuring that all reports reached the Title IX Coordinator; failed to impose appropriate interim measures in many cases...failed to conduct prompt, equitable, adequate, and reliable investigations...and failed to take sufficient action to identify, eliminate, prevent and address a potential hostile environment in individual cases.

*(Id.* ¶ 50.)

In addition to the Finding of Fact, Jasmin has alleged that: (1) Jasmin's mother was told there was nothing Baylor could do for her daughter in response to Jasmin's report that she had been raped by another student (FAC ¶ 61), (2) Baylor failed to investigate as many as six reports of sexual violence by Elliot prior to Jasmin's rape (*Id.* ¶ 28), (3) Baylor had an official policy not to investigate reports of sexual assault unless the alleged perpetrator was criminally convicted (*Id.*), (4) that Baylor had a policy of refusing to provide reasonable accommodations to female students who reported that they had been sexually assaulted[1], (5) Baylor failed to maintain policies and procedures in compliance with Title IX, including failing to maintain a dedicated Title IX coordinator in violation of 34 C.F.R. § 106.8 (*Id.* ¶¶ 71-72.), and (6) Baylor deviated significantly from the administrative requirements promulgated by the Department of Education (*Id.* ¶ 81). Finally, since the filing of Jasmin's original Complaint, seven other students have filed Title IX lawsuits against Baylor, alleging that Baylor was deliberately indifferent to their reports of sexual assault.[2]

---

[1] Though not explicitly alleged, this fact can be reasonably inferred based on Baylor's treatment of Jasmin, the other women identified in the FAC who reported sexual assaults, and the several other female students who have filed Title IX lawsuits against Baylor with similar allegations.

[2] Case #6:16-cv-00180-RP; Case # 6:16-cv-00173-RP; Case #6:16-cv-00069-RP

Jasmin's allegations, and reasonable inferences drawn from them, support a conclusion that Baylor had an official policy of indifference, and intentionally violated Title IX. Therefore, Baylor is liable under Title IX, independent of its actions prior to and post Jasmin's rape.

## IV. PLAINTIFF'S TITLE IX CLAIMS ARE TIMELY BECAUSE SHE HAS ALLEGED FACTS THAT SUPPORT SEVERAL FACTUAL BASES THAT BAR BAYLOR'S AFFIRMATIVE STAUTUTE OF LIMITATIONS DEFENSE

As outlined above, Jasmin's Title IX claim includes three theories of liability. Defendant argues that Jasmin's Title IX claim is time barred because Texas applies its two-year personal injury statute of limitations to Title IX claims. However, Baylor only addresses Jasmin's post-assault theory of Title IX liability. When all of Jasmin's Title IX theories of liability are analyzed, Jasmin's FAC gives rise to several bases to bar Baylor's statute of limitations defenses. Specifically, (1) Jasmin's Title IX claim did not accrue until early 2016, (2) the statute of limitations was tolled by Baylor's "fraudulent concealment," and (3) Baylor is equitably estopped from asserting a statute of limitations defense.

As a threshold issue, virtually the entirety of Baylor's argument is premised on the position that the requisite knowledge for purposes of any statute of limitations defense in a Title IX case is a victim's knowledge of their own sexual assault. This position is wrong, and ignores well established Title IX jurisprudence and its recognized policies.

The "injury" in a Title IX claim is not the underlying sexual assault, but the effect of a sexually hostile environment   created by the recipient institution's own misconduct. .  By the very terms of the statute, Title IX forbids an educational institution from discriminating against any of its students on the basis of their sex. 20 U.S.C.A. § 1681. Absent from this proscription is any mention of sexual misconduct experienced by students. Because of this, there is an implied right of action under Title IX, when an educational institution responds clearly unreasonably to known sexual misconduct, thus creating a sexually hostile environment for the victim. *Wills v. Brown U.*, 184 F.3d 20 (1st Cir. 1999). One form of Title IX "discrimination" is deliberate indifference to known sexual misconduct. *Wills v. Brown U.*, 184 F.3d 20 (1st Cir.

1999). Thus, courts have consistently held that a funding recipient cannot be held liable for the underlying sexual misconduct, but rather for its own misconduct in failing to respond to actual notice of sexual misconduct, thereby creating a sexually hostile environment for the victim. *See Davis*, 526 U.S. at 640 ("We agree with respondents that a recipient of federal funds may be liable in damages under Title IX *only for its own misconduct*… Accordingly, we rejected the use of agency principles to impute liability to the district for the misconduct of its teachers"); *Hansen v. Bd. of Trustees of Hamilton S.E. Sch. Corp.*, 551 F.3d 599, 605 (7th Cir. 2008) ("In enacting Title IX, Congress sought to hold educational institutions liable for their own misconduct, not for the misconduct of an employee.") In fact, in *King-White*, the very case Baylor relies on for its statute of limitations defense, the court analyzed the defendant's statute of limitations argument based on the plaintiff's knowledge of the defendant educational institution's own misconduct, and not of her own underlying sexual assault. *King-White v. Humble Indep. Sch. Dist.*, 803 F.3d 754, 762 (5th Cir. 2015).[3]

Despite the fact that *King-White* directly addresses this issue, Baylor relies on three state court cases not involving Title IX to support its position that the "injury" in a Title IX case is the underlying assault itself. Baylor's citations are unpersuasive. Baylor first cites *Doe v. Roman Catholic Archdiocese of Galveston-Houston*, 362 S.W.3d 803 (Tex. App. – Houston [14th Dist.], 2012, no pet.). *Roman Catholic Archdiocese* is readily distinguishable. In *Roman Catholic Archdiocese,* involved an adult's claim of childhood sexual abuse and the court rejected the plaintiff's delayed accrual argument, noting that when attempting to hold a third party liable for the sexual abuse itself, the plaintiff's knowledge of the alleged abuse was the relevant knowledge for purposes of his accrual date. *Id.* Because *Roman Catholic Archdiocese* did not involve a

---

[3] Though acknowledging that a claim may accrue long after the sexual assault itself, the *King-White* court happened to conclude the facts did not support the plaintiff's theory that her claim accrued only months before the filing of her lawsuit because the plaintiff was aware of facts long before that would have led a reasonable person to investigate further. *Id.* at 762.

federal Title IX claim seeking to hold defendant liable for its own misconduct not the underlying assault, it has no applicability to the issue here.[4]

Baylor's citation to *Samuelson v. Oregon State U.*, 2016 WL 727162 (D. Or. Feb. 22, 2016) is similarly inapplicable. In *Samuelson*, the court rejected the plaintiff's delayed accrual argument where the plaintiff was attempting to hold the defendant university liable only for its post-assault response to the plaintiff's report of sexual assault. *Id.* at *8. Here, unlike in *Samuelson*, Jasmin has alleged that Baylor is liable under Title IX not only for its deliberate indifference to Jasmin's report of rape, but also for its pre-assault deliberate indifference and its general, intentional violation of Title IX.

Having established that the requisite "injury" in a Title IX case is an educational institution's deliberate indifference to known sexual misconduct, Jasmin now turns to her defenses to Baylor's assertion of the statute of limitations to bar Jasmin's case.

## A. Jasmin's Claim Did Not Accrue Until Early 2016

In determining the correct accrual date of a Title IX claim, courts use the general accrual date as defined by federal law.[5] *King-White*, 800 F.3d at 762. A federal claim "accrues" when a plaintiff knows, or has sufficient information to know that he has been injured. *Id.*

Here, Jasmin's Title IX claim did not accrue until early 2016. With respect to Baylor's pre-assault deliberate indifference, Jasmin did not know the "facts that would ultimately support her claim," nor was there the "existence of circumstances that would lead a reasonable person to investigate further." *See King-White*, 800 F.3d at 762. Jasmin had no knowledge that Elliot had

---

[4] Defendant's other state court authorities are similarly inapplicable here. In both *Marshall v. First Baptist Church of Houston*, 949 S.W.2d 504 (Tex. App.--Hous. [14th Dist.] 1997) and *Mayzone v. Missionary Oblates of Mary Immaculate of Texas*, 2014 WL 3747249, (Tex. App.--San Antonio July 30, 2014), two unreported cases, the courts similarly held that the date of the sexual abuse itself was the accrual date for a negligence claim brought by a plaintiff against a church institution for their sexual abuse as a minor by a priest employed by that church institution. *Marshall*, 949 S.W.2d at 507; *Mayzone*, 2014 WL at *3. Neither case discussed the accrual date for a Title IX cause of action.
[5] Though Baylor acknowledges that accrual is governed by federal law, it nonetheless cites three state court cases in support of its argument that Jasmin's accrual date was not delayed. For this reason alone, Defendant's position on this point should be rejected by this Court.

a sexually violent past. (FAC ¶ 85.) Jasmin was not aware of Baylor's knowledge that Elliot had been convicted of a misdemeanor sexual assault in 2011 and that at least six female students had accused Elliot of sexual assault prior to Jasmin's rape. (*Id.*) Moreover, Jasmin was not in a circumstance in which a reasonable person would have investigated further. Even if Jasmin would have investigated further, all of this information was being actively concealed by Baylor, and would likely assert federal student privacy protections making it impossible for Jasmine to learn these facts with reasonable diligence at the time.[6] Jasmin first learned that there may be evidence of Baylor's deliberate indifference to sexual misconduct committed by its football players, and Elliot was when Jasmin was independently contacted in early 2016 by an investigative reporter for ESPN investigating these issues at Baylor. (FAC ¶ 85.) Thus, with respect to Baylor's pre-assault Title IX violation, Jasmin's claim did not accrue until early 2016.

Similarly, Jasmin had no reasonable basis of knowing, or discovering, Baylor's intentional violation of Title IX until the Finding of Fact was released. With Baylor's cooperation, it took a months-long investigation by an independent law firm hired by Baylor to reveal Baylor's intentional violation of Title IX. Surely, it would be unreasonable to expect Jasmin to have had the same access, resources and ability to investigate on her own. Thus, as Jasmin's pre-assault and general policy of indifference theories of Title IX liability did not accrue until early 2016, her lawsuit was timely and Baylor's Motion to Dismiss on this point must be denied.

### B. The Statute of Limitations Applicable To Jasmin's Title IX Claim Is Tolled And/Or Baylor Is Estopped From Asserting A Statute Of Limitations Defense

In the context of a Title IX claim, courts borrow the personal injury statute of limitations from the forum state. *King-White*, 803 F.3d at 759. When borrowing a state statute of limitations, a federal statute also borrows state law tolling provisions. *Hardin v. Straub*, 490 U.S. 536 (1989). Further, "when a motion to dismiss is based on the running of the statute of limitations, it can be granted only if the assertions of the complaint, read with the required liberality, would not permit the plaintiff to prove that the statute was tolled." *Jablon v. Dean*

---

[6] *See* 20 U.S.C. § 1232(g) ("FERPA").

*Witter & Co.*, 614 F.2d 677, 682 (9th Cir. 1980). Even if Jasmin's claim accrued in 2012, Jasmin's claim is still timely because Baylor's fraudulent concealment of the facts supporting Jasmin's claim tolled the statute of limitations, and Baylor is equitably estopped from relying on a statute of limitations defense.

> i. *The "Fraudulent Concealment" Doctrine Tolled The Running Of Jasmin's Statute of Limitations*

"A defendant's concealment of wrongdoing may toll the running of the statute of limitations." *Shell Oil Co. v. Ross*, 356 S.W.3d 924, 927 (Tex. 2011). "Fraudulent concealment tolls limitations because a person cannot be permitted to avoid liability for his actions by deceitfully concealing wrongdoing until limitations has run." *Id.* (internal quotations omitted). "[W]hen a defendant has fraudulently concealed the facts forming the basis of the plaintiff's claim, limitations does not begin to run until the claimant, using reasonable diligence, discovered or should have discovered the injury." *KPMG Peat Marwick v. Harrison County Hous. Fin. Corp.*, 988 S.W.2d 746, 750 (Tex. 1999). Generally, to invoke the fraudulent concealment doctrine, a plaintiff must show the defendant: (1) knew a wrong occurred, (2) had a fixed purpose to conceal the wrong, and (3) did conceal the wrong. *Shell Oil Co.*, 356 S.W.3d at 927. Interpreting Texas law, the Fifth Circuit has acknowledged, "Any statement, word or act which tends to the suppression of the truth, renders the concealment fraudulent." *Hickok Producing & Dev. Co. v. Texas Co.*, 128 F.2d 183, 185 (5th Cir. 1942) (internal quotations omitted).

Here, Jasmin's Title IX claim is tolled based on Baylor's affirmative actions to fraudulently conceal the facts forming the basis of her claim. With respect to Jasmin's pre-assault Title IX claim, Jasmin has alleged several facts demonstrating Baylor's knowledge of the pervasive sexual misconduct committed by Baylor football players, including pervasive and specific knowledge of sexual misconduct committed by Elliot. Contrary to Defendant's argument, Jasmin has alleged, and the Finding of Fact supports, several *affirmative* actions taken by Baylor to actively conceal virtually all of the facts that give rise to Jasmin's pre-assault Title IX claim. For example, Jasmin has alleged that, "[I]n certain instances, including reports of a sexual assault

by multiple football players, athletics and football personnel *affirmatively chose not to report* sexual violence and dating violence to an appropriate administrator outside of athletics." (FAC ¶ 52) (emphasis added.) The FAC also alleges that the football program affirmatively engaged in their own internal inquiries that, "...gave the illusion of responsiveness to complainants..." and never disclosed these reports publicly or to Baylor administrators. (*Id.*) Additionally,

> In some instances, the football program dismissed players for unspecified team violations and assisted them in transferring to other schools. As a result, some football coaches and staff abdicated responsibilities under Title IX and Clery; to student welfare; to the health and safety of complainants; and to Baylor's institutional values."

(*Id.*) Though these specific instances referenced in the Finding of Fact may have taken place subsequent to Jasmin's rape, it is reasonable to infer, given the allegations in Jasmin's complaint referencing the prior instances of sexual violence committed by Elliot and other Baylor football players, that Baylor engaged in this same conduct prior to and at the time of Jasmin's rape. Finally, Jasmin did not know, nor reasonably could have known, about these fraudulently concealed facts, until an independent reporter from ESPN contacted her in early 2016. Thus, Jasmin's pre-assault Title IX claim was tolled until early 2016, and is therefore, timely.

The statute of limitations with respect to Jasmin's post-assault Title IX claim is also tolled. First, Baylor knew of Jasmin's rape and its own failure to comply with Title IX in response. Next, Defendant had a fixed purpose for concealing its wrongdoing, namely, inducing Jasmin not to assert her rights under Title IX[7]. Finally, Baylor actually concealed its own wrongdoing by failing to educate its students, including Jasmin, as to conduct proscribed by Title IX and Baylor policies with respect to Title IX. (FAC ¶ 50.) In fact, Baylor actively concealed from Jasmin any policy regarding Title IX, or that she had a Title IX right to be free from a sexually hostile environment. Even worse, Baylor affirmatively misrepresented to Jasmin that there was nothing Baylor could do in response to her report that she had been raped. Finally, given the lack of training, education, and resources with respect to Title IX, Jasmin could not reasonably have

---

[7] Baylor had another fixed purpose for concealing its wrongdoing, namely, avoidance of the Federal Clery Act's requirement that all educational institutions publicly disclose verified incidents of sexual misconduct experienced by their students. (*See* 20 U.S.C. § 1092(f))

discovered the facts to support her claim. Even if Jasmin investigated and discovered that Baylor may have been deliberately indifferent to the prevalence of sexual misconduct committed by its football players, and that Baylor was intentionally violating Title IX , Baylor likely would have raised the FERPA restrictions as a means of further concealing any information relating to any other student reports.[8] Thus, Jasmin's allegations regarding Baylor's post-assault Title IX liability satisfies the aforementioned test for the application of tolling based on fraudulent concealment.

Baylor's assertion that Jasmin's tolling ended in January of 2014 is incorrect. At that time, Jasmin learned of other victims raped by Elliot by virtue of Elliot's criminal trial. However, Elliot's criminal trial did not address Baylor's knowledge of, and response to, Elliot's sexually violent past and the prevalence of sexual misconduct by football players, or Baylor's intentional violation of Title IX. While Baylor may argue that Jasmin had reason to know of this information by virtue of Elliot's criminal trial, when viewed in the light most favorable to Jasmin, the reasonable inference to be drawn is that she didn't, nor couldn't, have known this information simply because she learned Elliot had raped other women. Here again, even if Jasmin had approached Baylor about Elliot, Baylor would have likely continued to conceal all relevant information, including information about Elliot and his other victims, citing FERPA.

Nor does Baylor's argument that tolling requires reasonable diligence defeat Jasmin's tolling claim here. Jasmin has alleged that she, and/or her parents, (1) contacted the Baylor counseling center to report her assault and receive mental health services which she was denied (FAC ¶ 59), (2) contacted the Psychology Department to report her assault and receive mental health services which she was also denied (*Id.* ¶ 60), (3) contacted the academic services department to request academic accommodations due to the trauma of being raped which she was denied (*Id.* ¶ 61), (4) were told by a Baylor administrator that even "if a plane falls on your daughter, there's nothing we can do for you (*Id.*), (4) contacted Briles' office several times to report that Jasmin had been

---

[8] Baylor already cited FERPA, which protects the privacy of student records, as a means of trying to prevent Jasmin from engaging in timely discovery and investigation. (Dkt. # 25).

raped by Elliot, and received no meaningful response, (*Id.* ¶¶ 62-63.), and (5) reported her rape to the police. (*Id.* ¶ 57.) Despite contacting multiple Baylor administrators and employees, across several different departments, she was never informed about Baylor's policies with respect to reports of sexual violence or her rights under Title IX. Surely, Jasmin acted with reasonable diligence to discover her claim. Further, even had she continued to investigate her claim, Baylor was actively concealing virtually all of the information that could have formed the basis of her pre-assault and intentional violation of Title IX theories of liability, so any further investigation would have been fruitless.

Therefore, because Defendant fraudulently concealed the facts that gave rise to Jasmin's Title IX claim, the statute of limitations was tolled until Jasmin learned of these facts independently in early 2016.

> ii.     *Defendant is Estopped From Asserting A Statute Of Limitations Defense*

Estoppel is an equitable doctrine where, by the fault of one, "…another has been induced to change his position for the worse." *Off. of Atty. Gen. of Texas v. Scholer*, 403 S.W.3d 859, 862 (Tex. 2013) (internal citations omitted). "The purpose of estoppels is to prevent injustice and protect those who have been misled." *Roberts v. Haltom City*, 543 S.W.2d 75, 80 (Tex. 1976). In the context of a statute of limitations defense, "…the doctrine of equitable estoppel requires: (1) a false representation or concealment of material facts; (2) made with knowledge, actual or constructive, of those facts; (3) with the intention that it should be acted on; (4) to a party without knowledge or means of obtaining knowledge of the facts; (5) who detrimentally relies on the representations." *Johnson & Higgins of Texas, Inc. v. Kenneco Energy, Inc.*, 962 S.W.2d 507, 515-16 (Tex. 1998). At least one court has held that an educational institution can be equitably estopped from asserting a statute of limitations defense in a Title IX action based on its affirmative misrepresentations and concealments. *See Zimmerman v. Poly Prep Country Day Sch.*, 888 F. Supp. 2d 317, 341 (E.D.N.Y. 2012).

Here, Jasmin's allegations satisfy the elements of the aforementioned test. First, Baylor made false representations and concealed material facts with respect to Elliot, the prevalence of sexual misconduct committed by football players, its intentional violation of Title IX, and its ability to respond reasonably to Jasmin's report that she had been raped by Elliot. Next, Baylor had actual knowledge of all of the aforementioned misrepresentations and concealments. By failing to disclose several of the aforementioned facts and actively misleading Jasmin into believing it could not do anything for her when she reported her rape, Baylor obviously intended for Jasmin not to invoke her rights under Title IX. Because Baylor actively concealed this information, Jasmin did not have knowledge of, nor could she have reasonably discovered, Baylor's concealments with respect to Elliot and the football program, its intentional violations of Title IX, and its false representations regarding its ability to assist her after she reported her rape. Finally, Jasmin detrimentally relied on Baylor's concealments and false representations.

Baylor is effectively arguing that even though it was wildly non-compliant with, and intentionally violated Title IX at the time of Jasmin's rape and subsequent report, it should nonetheless be allowed to avail itself of the benefits of Title IX's statute of limitations protection. Such a position flies in the face of fairness and would allow Baylor to improperly take advantage of its own wrong. *See Glus v. Brooklyn E. Dist. Terminal,* 359 U.S. 231, 232-33 (1959) ("To decide the case we need look no further than the maxim that no man may take advantage of his own wrong. Deeply rooted in our jurisprudence this principle has been applied in many diverse classes of cases by both law and equity courts and has frequently been employed to bar inequitable reliance on statutes of limitations.") If accepted, Baylor's position would also yield an unfavorable policy - it would incentivize educational institutions to actively conceal necessary information from sexual assault victims in the hopes that they can run out the clock on a victim's civil claim. This consequence is in direct contravention to the very foundation of Title IX and fails to uphold the Supreme Court's mandate that Title IX be given a "sweep as broad as its language." *See North Haven Bd. of Educ., supra,* 456 U.S. at 521.

Because Jasmin can satisfy the elements necessary to invoke the doctrine of equitable estoppel, and allowing Baylor to rely on a statute of limitations defense after intentionally violating Title IX would be fundamentally unfair, this Court should deny Baylor's Motion to Dismiss on this point.

## V. PLAINTIFF'S ALLEGATIONS REGARDING THE DEPARTMENT OF EDUCATION'S ADMINISTRATIVE REQUIREMENTS ARE PROPER EVIDENCE OF A REASONABLE RESPONSE TO SEXUAL MISCONDUCT

In April of 2011, the Department of Education's ("DOE") Office for Civil Rights ("OCR") issued an administrative guidance document titled the Dear Colleague Letter ("DCL"). Jasmin's FAC includes several citations to the DCL discussing the requirements an educational institution must follow in responding to a complaint of sexual misconduct. (FAC ¶¶ 8-25.) Jasmin includes these allegations as evidence of a reasonable response to a report of sexual misconduct. Notably, Jasmin does not allege an independent cause of action for the violation of Title IX based solely on Baylor's deviance from these administrative guidelines. Rather, Jasmin alleges that Baylor's deviations from the DCL amount to deliberate indifference. (FAC ¶ 81.)

Defendant has asked this Court to dismiss any and all claims regarding non-compliance with the DCL. However, Jasmin has not asserted any independent causes of action for Baylor's non-compliance with the DCL. Baylor's request is more appropriately addressed by way of a motion to strike, as there is no independent cause of action for this Court to dismiss.

To the extent Baylor is arguing that the Court should disregard the DCL in its entirety, Defendant's position is not supportable by law. The Supreme Court has consistently looked to, and found support in agency guidelines and definitions when deciding issues related to a statute in which that specific agency has been given the congressional authority to interpret. *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57 (1986); *Davis*, 526 U.S. at 647-48. In *Meritor*, the Court was asked to determine whether a claim of a sexually hostile work environment was actionable under Title VII as a form of prohibited sex discrimination.[9] *Meritor*, 477 U.S. at 59. In support

---

[9] Title IX has consistently been interpreted based on the principles governing Title VII. See Lipsett, 864 F.2d at 896 for a discussion of the reliance on Title VII in Title IX cases.

of its holding that the creation of a sexually hostile work environment qualified as sex discrimination for purposes of Title VII, the Court relied on guidelines promulgated by the Equal Employment Opportunity Commission. *Id.* at 65. In doing so, the Court specifically stated:

> As an "administrative interpretation of the Act by the enforcing agency," *Griggs v. Duke Power Co.,* 401 U.S. 424, 433–434, 91 S.Ct. 849, 855, 28 L.Ed.2d 158 (1971), these Guidelines, " 'while not controlling upon the courts by reason of their authority, do constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance,' " *General Electric Co. v. Gilbert,* 429 U.S. 125, 141–142, 97 S.Ct. 401, 410–11, 50 L.Ed.2d 343 (1976), quoting *Skidmore v. Swift & Co.,* 323 U.S. 134, 140, 65 S.Ct. 161, 164, 89 L.Ed.124 (1944). The EEOC Guidelines fully support the view that harassment leading to noneconomic injury can violate Title VII.

*Id. See also Lipsett v. U. of Puerto Rico,* 864 F.2d 881, 896 (1st Cir. 1988) (relying in part on EEOC guidelines to hold that the disparate treatment standard recognized by Title VII also applies to claims made in the mixed employment-training context under Title IX). Similarly, the Court in *Davis* looked to DOE guidelines to support its holding that an educational institution could be liable in a private right of action under Title IX for student-on-student sexual harassment. *See Davis, supra,* 526 U.S. at 647 ("Likewise, although they were promulgated too late to contribute to the Board's notice of proscribed misconduct, the Department of Education's Office for Civil Rights (OCR) has recently adopted policy guidelines providing that student-on-student harassment falls within the scope of Title IX's proscriptions.")

Lower courts have similarly relied on the DOE's guidelines in determining various Title IX issues. *See Lopez v. Regents of U. of California,* 5 F. Supp. 3d 1106, 1124-25 (N.D. Cal. 2013) (recognizing that the DCL supports a conclusion that Title IX's requirements apply to sexual violence in addition to sexual harassment, but does not mention domestic violence as proscribed by Title IX and therefore, a university is not liable under Title IX for failure to respond reasonably to a report of domestic violence); *Doe v. Forest Hills Sch. Dist.,* 2015 WL 9906260, at *10 (W.D. Mich. Mar. 31, 2015) ("Finally, the school clearly did not comply with Title IX guidance in its investigation, as the OCR found…Although failure to comply with Title IX

guidance does not, *on its own,* constitute deliberate indifference, it is one consideration) (emphasis in original.)

In support of its argument, Defendant cites *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274 (1998). However, the Court in *Gebser* never addressed whether the DOE's guidelines could be used as evidence by either a judge, or the trier of fact to measure whether an educational institution's actions rose to the level of deliberate indifference. Rather, in *Gebser*, the Court was asked to determine whether the defendant school district's failure to comply with DOE regulations requiring an educational institution to (1) adopt and publish grievance procedures providing for a prompt and equitable resolution of a report of sexual harassment pursuant to 34 C.F.R § 106.8(b), and (2) notify its students and others of it non-discrimination policy pursuant to 34 C.F.R. § 106.9(a), could serve as the sole basis for a Title IX lawsuit for private damages absent a showing that the district had actual knowledge of the particular instance of sexual harassment experienced by the plaintiff. *Gebser*, 524 U.S. at 291. The Court held that such failures could not circumvent the actual notice requirement, noting that it had never held that a plaintiff could recover in a Title IX action based <u>solely</u> on the institution's violation of certain administrative requirements. *Id.* at 292.

Jasmin's position here does not run afoul of *Gebser*. In *Gebser*, the plaintiff relied solely on the school district's violation of two administrative regulations requiring general actions as the basis for her claim of deliberate indifference absent the defendant's actual notice of her harassment. Here, unlike *Gebser,* Jasmin has alleged actual notice and several facts in support of her deliberate indifference claim. Further, unlike the plaintiff in *Gebser* who argued that the violation of two specific DOE regulations, and nothing more, gave rise to liability under Title IX, in effect asking for a strict liability standard, Jasmin relies on the DCL to show the type of conduct that would constitute a reasonable response to a report of sexual assault which a fact finder can use as a frame of reference for determining if Baylor's response to Jasmin's complaint was "clearly unreasonable in light of the known circumstance."

Jasmin's position is supported by the use of administrative guidelines in other types of actions. Administrative guidelines, even those promulgated without a formal public notice and opportunity to comment, are commonly introduced in actions that require a jury to determine the reasonableness of a defendant's conduct. *See In re Air Crash Disaster at John F. Kennedy Intern. Airport on June 24, 1975*, 635 F.2d 67 (2d Cir. 1980) (admitting FAA advisory materials, that did not have force or effect of law, as standard of care evidence in negligence action arising from airplane crash); *Muncie Aviation Corp. v. Party Doll Fleet, Inc.*, 519 F.2d 1178 (5th Cir. 1975) (admitting FAA advisory materials, that did not have force or effect of law, as standard of care evidence in negligence action arising out of an airplane crash); *Wallner v. Kitchens of Sara Lee, Inc.*, 419 F.2d 1028 (7th Cir. 1969) (admitting the American Safety Standards Institute Code on Cableways and Conveyors in negligence action for injuries sustained by the plaintiff in a commercial bakery); *Stanley v. U.S.*, 347 F. Supp. 1088 (D. Me. 1972), *vacated on other grounds by*, 476 F.2d 606 (1st Cir. 1973) (admitting the American Standard Safety Code for Floor and Wall Openings, Railings, and Toe Boards promulgated by the American Standards Association as relevant standard of care evidence in a wrongful death action).

Though Title IX does not sound in negligence, the principles underlying a Title IX deliberate indifference analysis are similar to a determination of the reasonableness of a defendant's conduct in a negligence case insofar as the *Davis* Court defined deliberate indifference as acting "clearly unreasonably in light of the known circumstances." Unquestionably, the "known circumstances" to Baylor here included the DOE's interpretation of conduct that amounted to a reasonable response to a report of sexual violence.

Because Baylor's request on this point is improper, and should have been made by way of a motion to strike, and because the DCL is relevant to Jasmin's Title IX claim, this Court should deny Defendant's Motion to Dismiss on this point.

## VI.   PUNITIVE DAMAGES ARE AVAILABLE UNDER TITLE IX

In *Franklin v. Gwinnett County Pub. Schools,* the Supreme Court was asked to decide whether the implied right of action under Title IX includes a claim for monetary damages.  503 U.S. 60 (1992).  In holding that it does, the *Franklin* Court explicitly acknowledged that, "[T]he general rule, therefore, is that absent clear direction to the contrary by Congress, the federal courts have the power to award any appropriate relief in a cognizable cause of action brought pursuant to a federal statute."  *Id.* at 70-71.  This principle has been the foundation of the recognition of a federal judge's discretion to allow punitive damages in an appropriate Title IX case.  *See Doe v. Oyster River Co-op. Sch. Dist.*, 992 F. Supp. 467, 483 (D.N.H. 1997) ("However, in the rare case in which a local public school district has demonstrated complete indifference to the requirements of Title IX and has committed ongoing egregious violations with no sign of relenting, a federal court might determine, in its discretion, that a punitive damages remedy for a private party is the best, or only, means of forcing the school district into compliance."); *Canty v. Old Rochester Regl. Sch. Dist.*, 54 F. Supp. 2d 66, 70 (D. Mass. 1999) (denying the defendant educational institution's argument that punitive damages are not available in a Title IX case because the plaintiff's allegations supported a finding that the defendant's actions amounted to "ongoing egregious violations.")[10]

Here, Jasmin has alleged several facts that support a finding of Baylor's "ongoing egregious violations" of Title IX.  Therefore, this Court should exercise its discretion, and deny Baylor's Motion on this point.

---

[10] Baylor cites *Mercer v. Duke U.*, 50 Fed. Appx. 643 (4th Cir. 2002), an unpublished case, to support its argument that punitive damages are not available to Jasmin.  In *Mercer*, the court held that punitive damages were not available in a Title IX case because punitive damages were not available in a Title VI claim for damages.  *Id.* at 644.  First, *Mercer* is not binding on this court.  Next, *Mercer* did not deal with similar factual circumstances as alleged by Jasmin here, where Baylor's conduct amounted to "ongoing egregious violations" of Title IX.  Therefore, Jasmin respectfully requests that this Court decline to follow the reasoning found in *Mercer*, and instead follow the more appropriate cases cited by Jasmin above.

# VII. PLAINTIFF HAS ALLEGED VIABLE STATE LAW CLAIMS

Jasmin has alleged state law negligence and intentional infliction of emotional distress claims against all Defendants. Defendants have moved to dismiss all of Jasmin's state law claims. As demonstrated below, dismissal is not warranted.

## A. Jasmin's State Law Claims Were Timely Commenced

The statute of limitations applicable to Jasmin's state law claims is TEX. CIV. PRAC. & REM. CODE 16.0045(b), which provides that "[a] person must bring suit for personal injury not later than five years after the day the cause of action accrues if the injury arises as a result of" sexual assault or aggravated sexual assault. Every Texas state court to consider this matter in a reported opinion has held that the five year statute of limitations applies regardless of the theory of liability asserted, or whether the defendant is the actual perpetrator of the assault. *See Doe v. Catholic Diocese of El Paso*, 362 S.W.3d 707, 717 (Tex. App. – El Paso 2011) (holding that while the two year statute generally applies to negligence and intentional infliction of emotional distress claims, the "five-year statute of limitations applies where the plaintiff brings suit for personal injury caused by sexual assault or aggravated sexual assault"); *Stephanie M. v. Coptic Orthodox Patriarchate Diocese of the Southern United States*, 362 S.W.3d 656 (Tex.App. – Houston,14th Dist. 2011); *Doe v. Roman Catholic Archdiocese of Galveston-Houston ex rel. Dinardo*, 362 S.W.3d 803, 809-810 (Tex.App. – Houston, [14th Dist] 2012.)[11] Jasmin's rape certainly qualifies as a sexual assault, and her action was commenced well within five years of the date of the assault. Jasmin's claim is timely.

Defendant concedes, as it must, that the five year statute of limitations has been applied to claims against perpetrators and non-perpetrators alike. (Motion at p. 15.) But, relying on a handful of Federal cases decided *before* any state appellate tribunal considered which statute of

---

[11] A number of Federal courts, as well as unreported state decisions, have reached the same conclusion. *See Doe v. Catholic Society of Religious and Literary Educ.*, No. H–09–1059, 2010 WL 345926, at *16 (S.D.Tex. Jan. 22, 2010) (not reported); *Doe I v. Roman Catholic Diocese of Galveston–Houston*, No. 05–1047, slip op. at 21 (S.D.Tex. Mar. 27, 2006) (not reported); *Mayzone, supra,* 2014 WL 3747249 at *3; *C.R. v. American Institution for Foreign Study, Inc.*, 2013 WL 5157699 (W.D. Tex. Sept. 12, 2013) (not reported.)

limitations applies to a negligence claim against a nonperpetrator, Baylor contends that application of the five year statute depends on what theory of liability the plaintiff advances. (Motion at pp. 14-15.) Specifically, while recognizing that the five year statute has been applied when an employer negligently supervised its employee (Motion at p. 15), Baylor claims that the two year statute applies to other negligence theories. This proposition is unquestionably inconsistent with Texas law. *Stephanie M.* noted:

> section 16.0045(a) applies to a "suit for personal injury," which includes claims for negligence. *There is no language restricting this particular limitations statute to certain types of personal-injury claims*; hence, there is nothing in the statute to indicate that the legislature intended to limit this provision to causes of action against only the perpetrators of sexual assault.

*Stephanie M.*, *supra*, 362 S.W.3d at 659 (emphasis added.) There is likewise nothing in the statute to indicate the legislature intended to restrict application of this statute to only certain negligence claims. Jasmin's theory of liability is irrelevant. If Baylor is a proximate cause of Jasmin's injury – as Jasmin has alleged – the five year statute applies. *See C.R.*, *supra*, 2013 WL 5157699 at *8 (five year statute "applies to claims against a defendant alleged to have proximately caused the injuries.)

Nothing in Defendant's primary authority – *Doe v. Linam*, 225 F.Supp.2d 731 (S.D. Tex. 2002) – changes this. *Linam* is a Federal case decided long before any state appellate tribunal considered whether to apply the five year statute of limitations to a negligence claim. Ultimately, every reported state court opinion on the subject has disagreed with *Linam*. Given this Court's obligation to apply Texas law, it is *Stephanie M.* and its progeny that controls; not *Linam*. *Linam* is also suspect because it did not give any consideration to the question of which statute to apply. It simply assumed - with no analysis - that the two year rule was applicable. Texas courts have repeatedly refuted this assumption.[12]

---

[12] The other cases cited by Defendant on this point, *Twist v. Lara*, 2007 WL 2088363 (S.D. Tex. July 19, 2007), *Doe v. St. Stephen's Episcopal Sch.*, 382 Fed. App'x 386, 390 (5th Cir. 2010) are similarly deficient. Both cases also predate *Stephanie M.*, and neither has any reasoned discussion of which statute to apply. *Twist* simply follows *Linam*, while *Doe v. St. Stephen's* contains no discussion of why it applied the two year statute of limitations.

Finally, Defendant attempts to parse Jasmin's damages, arguing that because "Baylor's alleged failure[s] to provide assistance or counseling[] do not involve assaultive conduct" any damages resulting from that failure is subject to the two year statute. (Motion at p. 15.) Baylor mistakes the language of 16.0045, which is far broader than it assumes. The statute applies to any injury that "arises as a result of" sexual assault. Ultimately, whether an injury "arises as a result of" sexual assault is a matter of proximate causation; which Baylor has not raised in its motion to dismiss. Regardless, even if Baylor were correct, this would not bar Jasmin's claim regarding Baylor's negligence in allowing the rape itself to occur; it would simply limit the damages that Jasmin could seek from that breach. Finally, Defendant's position makes little sense in light of *C.R.*, *supra*, where the court found that a claim by the parents of a victim of childhood sexual abuse to recover out of pocket medical expenses paid on behalf of the child was governed by the five year statute of limitations. 2013 WL 5157699 at *8. It makes little sense to apply one statute when seeking reimbursement for post abuse medical care, and a different statute when seeking compensation for a defendant's refusal to provide such care. Jasmin's claim is not barred by the statute of limitations.

### B. Baylor Owed Extensive Duties to Jasmin

#### 1. *Baylor Owed Duties Under the Texas Multi-Factor Duty Assessment*

Baylor's motion demonstrates a profound misunderstanding of the concept of duty by directly equating the existence of a duty with the existence of a special relationship. The two concepts are not identical. Jasmin has established a host of duties owed by Baylor which are not dependent on the existence of a special relationship. For example, under Texas law:

> [a]bsent a special relationship, the existence of a duty is a question of law for the court to determine from the particular facts of the case. [Citation.] In making that determination, we balance the risk, foreseeability and likelihood of injury, against the social utility of the actor's conduct, the magnitude of the burden of guarding against the injury, and the consequences of placing that burden on the defendant. [Citation.] The foremost and dominant consideration of these factors is foreseeability of the risk—although it alone will not warrant imposing a duty.

*Williams v. United Pentecostal Church Intern.,* 115 S.W.3d 612 (Tex.App. – Beaumont 2013) (unreported); *see also Golden Spread Council, Inc. No 562 of Boy Scouts of America v. Akins,* 926 S.W.2d 287, 289-290 (Tex. 1996) (*Akins*).

These factors favor the imposition of a duty. Baylor was unquestionably aware of prior acts of sexual assault by members of the football program, and of repeated sexual assaults perpetrated by Elliot. (FAC. at ¶¶ 33-43, 88.) Given this history, it was inevitable – let alone foreseeable – that Elliot would sexually assault another student if Baylor did not respond appropriately. Thus, the most important factor strongly favors the imposition of a duty. The related factors of risk and likelihood of injury similarly support the existence of a duty because given Elliot's history of assault, the likelihood that another student would be raped by Elliot was off the charts. While Baylor, on the whole, provides services that are valuable to the community, its football program does not carry the same utility and there is no value in protecting students who have habitually assaulted others. Guarding against this injury would not have resulted in a substantial burden. Baylor was already subject to Title IX, it simply wasn't complying. Baylor also had sexual misconduct policies, but chose not to apply them to Elliot. And, following Jasmin's complaint, when Baylor was finally prompted to take action by a public criminal charge against Elliot, he promptly transferred to a different school. (FAC at ¶ 65.) Finally, Baylor possessed superior knowledge of the risk and had the ability to control its employees (who tolerated sexual assault by football players), and its players (who could have been disciplined under its sexual misconduct policies.) These factors strongly support the imposition of duties to supervise Tevin Elliot, and to protect Jasmin and other students.

2. *The "No Duty To Aid" Rule Does Not Apply Since Baylor Took Affirmative Actions That Increased the Likelihood That Jasmin Would Be Raped By Elliot*

Baylor argues that, absent a special relationship, it has no duty to "protect another from the criminal acts of a third person or to control their conduct." (Motion at p. 16.) But that rule is not applicable here. It is well-established that:

[w]hile a person is generally under no legal duty to come to the aid of another in distress, he is under a duty to avoid any affirmative act which might worsen the situation. One who voluntarily enters an affirmative course of action affecting the interests of another is regarded as assuming a duty to act and must do so with reasonable care.

*Otis Engineering Corp. v. Clark* (1983) 668 S.W.2d 307, 309 (citations omitted.)[13] This principal was applied by the Supreme Court of Texas in a strongly analogous factual circumstance in *Akins*. 926 S.W.2d 287. There, a BSA council had been informed that an assistant scoutmaster in one of its troops was "messing with some boys" and, suspecting the allegation may be serious, investigated but did not remove him. *Id.* at 290. Despite this, a few months later the council introduced the molester to a church that was in need of a scoutmaster. He was hired to the position and molested children. *Id.* at 289. Citing its earlier opinion in *Otis*, the court held that by introducing a suspected molester to the church who hired him, the council "could be found to have actually increased the risk and likelihood of injury in this case. We have recognized that in some circumstances, at least, a person is under a duty to avoid such an affirmative act that may actually worsen a situation." *Id.* at 291.

Like *Akins*, this is not a case where Baylor merely sat by and did not take action to protect a person in danger. Instead, Baylor's affirmative acts with regard to Elliot made sexual assault more likely. Undoubtedly, Baylor entered into an affirmative course of action that placed the success of its football program over the safety of its students. Even Pepper Hamilton found that the special treatment afforded to football players accused of assault *increased the risk* of future sexual assaults by showing the players they were not subject to rules applicable to others. Pepper Hamilton found:

---

[13] Baylor owed a similar, but distinct, duty to protect Jasmin from Elliot under the negligent undertaking doctrine, which applies if: "(1) the defendant undertook to perform services that it knew or should have known were necessary for the plaintiff's protection; (2) the defendant failed to exercise reasonable care in performing those services; and either (a) the plaintiff relied upon the defendant's performance, or (b) the defendant's performance increased the plaintiff's risk of harm." *Nall v. Plunkett* (2013) 404 S.W.3d 552, 555-556; *see also* Restatement (Second) of Torts § 324A (providing the rule for liability to a third person for negligent performance of an undertaking)." After receiving complaints about Elliot, Baylor undertook to investigate those claims for the protection of female students. As discussed throughout, Baylor's incompetent performance in carrying out these duties increased the risk of harm to Jasmin.

[t]he football program maintained an ad-hoc, internal system of discipline, separate from any Baylor processes which: (1) resulted in "conduct being ignored or players being dismissed from the team based on an informal and subjective process," . . . [and] (3) reinforced "...the perception that rules applicable to other students are not applicable to football players, improperly insulates football players from appropriate disciplinary consequences, and puts students, the program, and the institution at risk of future misconduct."

(FAC at ¶ 52.) This informal system was invoked when Jasmin reported Elliot, and in regard to earlier complaints against him. (FAC at ¶ 90.) Because Elliot had faced no repercussions from his earlier actions, Baylor "affirmatively increased the likelihood that Jasmin, and other female students, would be raped by football players, who knew they were unlikely to face any repercussions from their actions."[14] (FAC at ¶ 91.) Because Baylor increased the likelihood that Jasmin would be raped, the "no duty to aid rule" does not apply.

### 3. Baylor Owed a Duty to Train its Employees Who Were Tasked With Responding to Sexual Assault Reports

"An employer has a duty to adequately hire, train, and supervise employees." *Patino v. Complete Tire, Inc.*, 158 S.W.3d 655, 660 (Tex.App. – Dallas 2005), citing *Allen v. A & T Transp. Co.*, 79 S.W.3d 65, 70 (Tex.App.-Texarkana 2002, pet. denied). "The negligent performance of those duties may impose liability on an employer if the complainant's injuries result from the employer's failure to take reasonable precautions to protect the complainant from the misconduct of its employees." *Id.* Baylor delegated the responsibility of investigating and responding to allegations of sexual assault by players to football staff. (FAC at ¶¶ 90, 91.) Despite this, Baylor did not train or educate its employees to carry out those duties competently. (FAC at ¶¶ 93, 94.) Defendant owed a duty to properly train its employees, but failed to do so.[15]

---

[14] Additionally, Baylor affirmatively renewed Elliot's scholarship, twice; thereby ensuring his presence on campus. If necessary, Jasmin requests leave to amend to allege this fact.

[15] Baylor is also responsible for the negligence of its employees under the doctrine of *respondeat superior*, which allows for employer liability for its "employee's negligence in the scope of the employment." *Janga v. Colombrito* (2011) 358 S.W.3d 403. Under that doctrine Baylor is responsible as a matter of law for the negligence of McCaw and Briles in the administration of Baylor's Athletic Department and football program, respectively, and for their negligence in investigating and responding to allegations of sexual assault against Elliot.

## 4. Special Relationship

Baylor focuses extensively on the absence of a special relationship between itself and Jasmin. As discussed above, the existence or non-existence of a special relationship is largely a red-herring given the several other duties Baylor owed in this case which are not dependent on the existence of a special relationship. But, on a fundamental level, Baylor's argument is misplaced on these facts. Defendant argues that courts have moved away from a policy of making universities the insurers of their students' health and safety, and are loathe to "shift moral blame and legal responsibility away from student perpetrators." (Motion at pp. 17-18.) This makes sense in cases like *Boyd v. Texas Christian Univ.*, 8 S.W. 3d 758 (Tex.App. – Forth Worth 1999, no pet.), where there was no evidence that the University was aware of the violent propensities of the football players, or in *Tanja H. v. Regents of the Univ. of Calif.*, 228 Cal.App.3d 434 (1991), where there was likewise no prior notice of the assailant's assaultive propensities. In those cases, the university would be liable simply because the victim was a student. It is no wonder courts have been unwilling to impose liability in such circumstances.[16]

But this is not a case, like those cited by Defendants, where the plaintiff relies on a vague threat of harm posed generally by all college students. The policy underlying a duty assessment - and any common sense understanding of moral blame - changes dramatically in cases like this, where Defendants had repeatedly been given notice of a specific threat of sexual assault posed by Elliot and allowed him to remain on campus. The law does not permit Defendants to tolerate the presence of a known serial rapist on Baylor's campus without repercussion.

---

[16] And, some courts have found that a college is in a special relationship with its recruited athletes. *See Kleinknecht v. Gettysburg College*, 989 F.2d 1360 (3d Cir.1993); *Davidson v. University of North Carolina at Chapel Hill*, 142 N.C.App. 544, 556 (2001.) Although these cases have held that a university owed a duty to the student athlete during team related activities, there is no reason to limit the duty here. Baylor clearly had a different relationship with Elliot - who it had recruited to attend the University and play football - than it did with most other students. Coupled with Baylor's knowledge that Elliot had sexually assaulted many women, it is perfectly reasonable to find the University was in a special relationship with Elliot. A special relationship with Elliot is sufficient to support a duty to Jasmin. Rest. (2d) Torts § 315.

Baylor's argument that "suspension from school would not have prevented [Elliot] from attending an off-campus party in Waco, South Padre Island, New Orleans, or anywhere else" is not compelling. (Motion at p. 19.) Baylor ignores other actions it could have taken, such as the football coach imposing a curfew on Elliot as a condition of regaining eligibility, which would effectively have prevented the sexual assault. Alternatively, Elliot – who was a convicted criminal – could have been dismissed from the team. In fact, when Baylor finally acted and dismissed Elliot from the football team, he promptly transferred to a different university. (FAC at ¶ 65.) Had Baylor acted sooner, Elliot would have been gone, and Jasmin would not have been raped. For the reasons discussed above, Baylor owed and breached substantial duties.

### C. Jasmin's IIED Cause of Action Has Been Properly Pled

Defendant correctly notes that IIED is a "gap filler" tort. (Motion at p. 21.) It applies in "those rare instances in which a defendant intentionally inflicts severe emotional distress in a manner so unusual that the victim has no other recognized theory of redress." *Hoffmann–La Roche, Inc. v. Zeltwanger*, 144 S.W.3d 438, 447 (Tex.2004). "[T]he tort's clear purpose is to supplement existing forms of recovery by providing a cause of action for egregious conduct that its more established neighbors in tort doctrine would technically fence out." *Standard Fruit and Vegetable Co., Inc. v. Johnson*, 985 S.W.2d 62, 68 (1998) (quotation omitted.)

Baylor argues that other claims, such as Title IX, already provide a means for recovery so there is "no gap to fill." (Motion at p. 22.) But Baylor forgets that a traditional Title IX claim is intended to compensate the victim for damages caused by *continued* exposure to harassment of which the defendant had actual knowledge, i.e. post rape conduct that caused additional harm to the plaintiff. *See Davis*, *supra*, 526 U.S. at 640–43. Jasmin's IIED claim, in contrast, seeks to recover a different set of damages – emotional distress resulting from the rape itself. If Jasmin's traditional Title IX claim is successful, its focus on post rape conduct would not allow recovery for the damages sought by Jasmin's IIED claim. [17] The IIED claim fills this gap. [18]

---

[17] Baylor argues that "none of the alleged wrongful acts referenced in the Amended Complaint is independent of the conduct that forms the basis of Hernandez's other claims," and thus, IIED is

28

Under Texas law, IIED is proven if: "(1) [] the defendant acted intentionally or recklessly; (2) [] the conduct was 'extreme and outrageous'; (3) [] the actions of the defendant caused the plaintiff emotional distress; and (4) [] the emotional distress suffered by the plaintiff was severe." *Cantu v. Rocha*, 77 F.3d 795, 810 (5th Cir. 1996.) Baylor does not directly contest these elements. Instead, it argues that IIED is "only available in those situations in which severe emotional distress is the intended consequence or primary risk of the actor's conduct." (Motion at p. 23) (italic emphasis omitted, underline emphasis added.) Baylor then argues that it did not "intend[] to cause Hernandez emotional distress," while ignoring the "primary risk" prong.

Jasmin has plainly alleged that Baylor was aware of multiple prior rapes by Elliot. (FAC at ¶ 88.) Well before Jasmin was ever exposed to Elliot, Baylor was aware that he had been convicted of a misdemeanor sexual assault (FAC at ¶ 30); had been accused of raping a Baylor student (FAC at ¶¶ 27-29); and that six other girls had previously accused Elliot of sexual assault. (FAC at ¶¶ 27-29.) No actions were taken to prevent future assaults by Elliot, or to protect vulnerable female students from him. All of this occurred against a backdrop where Baylor treated its football players as though they were above the law. (FAC at ¶¶ 27-43, 52). Elliot's rape of Jasmin caused her to suffer severe emotional distress. (FAC at ¶¶ 102-103.) It is no stretch of the imagination to find that in many cases the emotional impact of a sexual assault is greater than any physical damage, and in fact this Court is obligated to draw this

---

improper. (Motion at p. 22.) This argument is premature. Jasmin's IIED claim and traditional Title IX claim are focused on different time periods and different damages. Only Jasmin's pre-assault Title IX claim or negligence claim could overlap with the IIED claim, which seeks to recover for the rape itself. If this Court ultimately rejects those claims substantively, then any overlap with those claims is irrelevant. Baylor seeks to put the cart before the horse by dismissing the IIED claim before this Court decides if the other claims, of which it may be duplicative, are legally valid. This Court should decline Baylor's invitation to rule on this issue.

[18] Jasmin has asserted a distinct theory that would allow recovery for the rape itself: negligence. If this Court finds that Baylor owed a duty to Jasmin, there would be no gap to fill, and IIED would not be an appropriate theory of liability. But, if this Court finds that Baylor owed no duty to Jasmin, then the law simply does not otherwise allow a remedy for Baylor's actions. In other words, Jasmin's IIED claim would be proper to address Baylor's "egregious conduct that [IIED's] more established neighbors in tort doctrine would technically fence out."

inference from the pleadings. The inevitable consequence of Baylor's despicable choice to let a serial rapist loose on its students was that other young girls would be raped by Elliot and suffer severe emotional distress. This was the primary risk of Baylor's conduct.

In its motion, Baylor does not even acknowledge Jasmin's allegations that it knew of prior rapes by Elliot. Instead, it deceptively argues that Jasmin's theory is based on the "maladministration" of student conduct policies and that "[i]f Hernandez's theory were plausible, then every student at Baylor during the applicable time period would have a viable cause of action against Defendants for intentional infliction of emotional distress." (Motion at p. 23.) Not so. Every student at Baylor did not suffer severe emotional distress as a result of being raped; becoming the eighth victim of a known serial rapist.

### D.  Jasmin's Official Capacity Claims

Jasmin concedes that her state law claims against Briles and McCaw in their official capacities are duplicative of her state law claims against Baylor. Jasmin will agree to dismiss her official capacity claims against Briles and McCaw, but requests leave to amend her FAC to bring claims against Briles and McCaw in their individual capacities.

As evidenced above, Jasmin's state law claims against Briles and McCaw are timely under Texas Law. Therefore, in theory, Jasmin could dismiss her claim against them here, and simply bring another lawsuit against them in their personal capacities. However, for purposes of efficiency, Jasmin requests that this Court grant her leave to amend this lawsuit to allege claims against Briles and McCaw in their personal capacities.

## VIII.  CONCLUSION

For the foregoing reasons, Jasmin respectfully requests that this Court deny Defendants' Motion to Dismiss in its entirety.

/ / /

/ / /

/ / /

Dated:  August 17, 2016

Respectfully submitted,

/s/ Alexander S. Zalkin
Alexander S. Zalkin (admitted *pro hac vice*)
alex@zalkin.com
Ryan M. Cohen (admitted *pro hac vice*)
ryan@zalkin.com
THE ZALKIN LAW FIRM, P.C.
12555 High Bluff Drive, Ste. 301
San Diego CA  92130
Telephone: (858) 259-3011
Facsimile: (858) 259-3015

Susan Hutchison (#10354100)
hutch@hsjustice.com
HUTCHISON & STOY PLLC
509 Pecan Street, Suite 201
Fort Worth TX  76102
Telephone: (817) 820-0100
Facsimile: (817) 820-0111

*Attorneys for Plaintiff Jasmin Hernandez*

## CERTIFICATE OF SERVICE

I hereby certify that on August 17, 2016, I electronically filed the foregoing paper with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record in this matter.

THE ZALKIN LAW FIRM, P.C.

/s/ Alexander S. Zalkin
Alexander S. Zalkin (CSB#280813)
alex@zalkin.com
THE ZALKIN LAW FIRM, P.C.
12555 High Bluff Drive, Ste. 301
San Diego CA 92130
Telephone: (858) 259-3011
Facsimile: (858) 259-3015

Dated: August 17, 2016