## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
### Waco Division

JASMIN HERNANDEZ;                    §
                                     §
            Plaintiff,               §
                                     §
                                     §   Case No.: 6:16-cv-00069-RP
                                     §
v.                                   §
                                     §   Hon. Robert Pitman
BAYLOR UNIVERSITY BOARD OF           §
REGENTS; ART BRILES, in his official §
capacity as head football coach; IAN §
MCCAW, in his official capacity as   §
athletic director;                   §
                                     §
            Defendants.              §
                                     §
                                     §
                                     §
_____      §

## PLAINTIFF'S OPPOSITION TO DEFENDANT BRILES' MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT

# TABLE OF CONTENTS

I.      INTRODUCTION……………………………………………………………………1

II.     QUESTIONS PRESENTED…………………………………………………………..1

III.    STATEMENT OF FACTS………………………………………………………………2

IV.     ADDITIONAL PUBLICLY REPORTED FACTS
        RELEVANT TO DEFENDANT'S MOTION………...……………………………………4

V.      PLAINTIFF'S STATE LAW CLAIMS ARE TIMELY……………………………...4

VI.     DEFENDANT BRILES OWED PLAINTIFF SEVERAL
        INDEPENDENT DUTIES OF CARE……………………………………………………...8

        A.  Briles Owed Jasmin A Duty Under Texas Multi-Factor Duty Analysis……...8

        B.  Briles Owed a Duty to Not Engage in Conduct that Would Increase
            The Likelihood That Jasmine Would Be Harmed…………………………....9

        C.  Briles Owed An Independent Duty To Reasonably Execute His
            Responsibilities As Head Football Coach Pursuant to Restatement
            § 350………………………………………………………………………...11

        D.  Briles Owed A Duty Not To Create An Unreasonable Risk Of
            Harm Pursuant to Restatements § 354…………………………………………13

        E.  Briles Owed An Independent Duty To Control Elliott Under
            Restatement § 356……………………………………………………………14

VII.    PLAINTIFF HAS PROPERLY PLED A CLAIM FOR INTENTIONAL
        INFLICTION OF EMOTIONAL DISTRESS………………………………………15

        A.  It Is Premature To Decide The Viability Of Plaintiff's IIED Claim
            On Briles' Motion……………………………………………………………15

        B.  Plaintiff Has Pled A Viable IIED Cause of Action…………………………16

VIII.   CONCLUSION…………………………………………………………………17

# TABLE OF AUTHORITIES

**CASES** **Page(s)**

*C.R. v. American Institution for Foreign Study, Inc.*,
  2013 WL 5157699 (W.D. Tex. Sept. 12, 2013)…………………………………………6, 7

*Cantu v. Rocha*,
  77 F.3d 795 (5th Cir. 1996.)…………………………………………………………………16

*Doe v. Catholic Diocese of El Paso*,
  362 S.W.3d 707 (Tex.App. – El Paso 2011)……………………………………………5

*Doe v. Catholic Society of Religious and Literary Educ.*,
  2010 WL 345926 (S.D.Tex. Jan. 22, 2010)…………………………………………………5

*Doe v. Linam*,
  225 F.Supp.2d 731 (S.D. Tex. 2002)……………………………………………….…6

*Doe v. Roman Catholic Archdiocese of Galveston-Houston ex rel. Dinardo*,
  362 S.W.3d 803 (Tex.App. – Houston, [14th Dist] 2012.)…………………..………….....5

*Doe I v. Roman Catholic Diocese of Galveston–Houston*,
  No. 05–1047 (S.D.Tex. Mar. 27, 2006)………………………………………….……5

*Golden Spread Council, Inc. No 562 of Boy Scouts of America v. Akins*,
  926 S.W.2d 287 (Tex. 1996)……………………………………………………….8, 10

*Hoffman-LaRoche, Inc. v. Zeltwanger*,
  144 S.W.3d 438 (Tex.2004)……………………………………………………………15

*Leitch v. Hornsby*,
  935 S.W.2d 114 (Tex. 1996)……...…………………………………………………....8, 11

*Mayzone v. Missionary Oblates of Mary Immaculate of Texas*,
  2014 WL 3747249…………………………………………………………………...5

*Otis Engineering Corp. v. Clark*,
  668 S.W.2d 307(1983)...……………………………………………………………9

*Standard Fruit and Vegetable Co., Inc. v. Johnson*,
  985 S.W.2d 62 (1998)……………………….....……………………………………16

*Stephanie M. v. Coptic Orthodox Patriarchate Diocese of the Southern United States*,
  362 S.W.3d 656 (Tex.App. – Houston, 14th Dist. 2011)……….……………….............5

*Twist v. Lara*,
  2007 WL 2088363 (S.D. Tex. 2007)……………...……………………………....……6

*Williams v. United Pentecostal Church Intern.*,
  115 S.W.3d 612 (Tex.App. – Beaumont 2013)…………………………………8

**TABLE OF AUTHORITIES**
**(Continued)**

Page(s)

*Wilson v. Goodyear Tire & Rubber Co.*,
   753 S.W.2d 442, 446 (Tex. App.--Texarkana 1988)……………………..………..14

**Statutes**

TEX. CIV. PRAC. & REM. CODE 16.0045(b)…………………… ……………….................5

**Other Authorities**

Restatement (Second) Agency § 350……………………………………………...........11

Restatement (Second) Agency § 354………………………….…………………………13

Restatement (Second) Agency § 356…………………………………………...…..14, 15

Restatement (Third) Agency § 7.01………………………………………………...12

## I.    INTRODUCTION

This case arises out of Plaintiff Jasmin Hernandez's multiple rapes by Tevin Elliott, a Baylor University Football Player, while both were students at Baylor.  Jasmin brought suit against Baylor University, Art Briles, Baylor's head football coach at the time, and Ian McCaw, Baylor's Athletic Director at the time.  As to Defendant Briles, Jasmin asserted causes of action for negligence and intentional infliction of emotional distress ("IIED").  In response, Briles filed a Rule 12(b)(6) Motion to Dismiss ("Motion").[1]  Briles' Motion generally asserts that (1) Jasmin's claims against him are untimely, (2) Briles did not owe her a duty of care, and (3) Jasmin's claim for IIED is not viable.

As demonstrated in detail below, Defendant's arguments have no merit.  First, Texas courts routinely, and virtually unanimously, apply TEX. CIV. PRAC. & REM. CODE 16.0045(b)'s five year statute of limitations for any cause of action arising out of a sexual assault.  The proper application of this sexual assault specific statute of limitations renders Jasmin's claims timely.  Next, Briles owed several duties of care to Jasmin, notwithstanding the fact that his actions may have been taken within the scope of his employment as Baylor's head football coach.  Finally, Briles' efforts to dismiss Plaintiff's IIED claim on this Motion are premature.  Nevertheless, Plaintiff's allegations support a finding that Briles' actions amounted to IIED.

## II.    QUESTIONS PRESENTED

(1) Does TEX. CIV. PRAC. & REM. CODE 16.0045(b), which provides a five-year statute of limitations for all claims arising out of sexual assault, apply to a negligence claim

---

[1] Defendant McCaw also filed a Rule 12(b)(6) Motion to Dismiss raising nearly identical substantive arguments as Briles.  For that reason, Plaintiff's response to both Motions will be largely duplicative, with minor differences to address the unique facts applicable to each Defendant.

against a third party for failing to take reasonable steps to prevent a rape, when that third party had knowledge of several prior rapes and sexual assaults committed by the perpetrator, and had the ability to control the perpetrator?

(2) Does an agent, who had knowledge of several prior rapes and sexual assaults committed by a perpetrator, had the ability to control the perpetrator, and had taken steps to control the perpetrator owe a duty, independent of any duty owed by his principal, to act reasonably to prevent that perpetrator from harming others?

## III.    STATEMENT OF FACTS

Jasmin was raped multiple times by Elliott on April 15, 2012.  (Plaintiff's Second Amended Complaint ("SAC") ¶ 55.)  Prior to raping Jasmin, Elliott had been accused of sexually assaulting at least six female Baylor students.  (SAC ¶ 28.)  Bethany McCraw, Baylor's Chief Judicial Officer responsible for responding to reports of sexual violence, indicated that the football program was aware of the six accusations of sexual assault reported against Elliott.  (*Id.*)  Additionally, Defendants Briles and McCaw were aware that Elliott was convicted of a misdemeanor sexual assault in November of 2011, for sexually assaulting a local community college student.  (SAC ¶ 30.)

After mounting public pressure to respond to the several allegations of Baylor football player sexual misconduct, Baylor commissioned an investigation by Pepper Hamilton LLP into its response to reports of sexual misconduct.  (SAC ¶ 44.)  In May of 2016, Pepper Hamilton released a Finding of Fact document ("Finding of Fact") outlining the results of its investigation. With respect to the athletic department, the Finding of Fact concluded that:

> In addition to broader University failings, Pepper found specific failings within both the football program and Athletics Department leadership, including a failure to identify and respond to a pattern of sexual violence by a football player, to take action in response to reports of a sexual assault by multiple football players, and to take action in response to a

2

report of dating violence.

(SAC ¶ 49.)  The Finding of Fact also concluded that:

- "[T]he University and Athletics Department failed to take effective action in response to allegations involving misconduct by football staff."

- "In certain instances, including reports of a sexual assault by multiple football players, athletics and football personnel affirmatively chose not to report sexual violence and dating violence to an appropriate administrator outside of athletics. In those instances, football coaches or staff met directly with a complainant and/or a parent of a complainant and did not report the misconduct. As a result, no action was taken to support complainants, fairly and impartially evaluate the conduct under Title IX, address identified cultural concerns within the football program, or protect campus safety once aware of a potential pattern of sexual violence by multiple football players."

- "Football staff conducted their own untrained internal inquiries, outside of policy, which improperly discredited complainants and denied them the right to a fair, impartial and informed investigation, interim measures or processes promised under University policy. In some cases, internal steps gave the illusion of responsiveness to complainants but failed to provide a meaningful institutional response under Title IX. Further, because reports were not shared outside of athletics, the University missed critical opportunities to impose appropriate disciplinary action that would have removed offenders from campus and possibly precluded future acts of sexual violence against Baylor students."

- "Athletics personnel failed to recognize the conflict of interest in roles and risk to campus safety by insulating athletes from student conduct processes."

- "The football program maintained an ad-hoc, internal system of discipline, separate from

3

any Baylor processes which... reinforced "...the perception that rules applicable to other students are not applicable to football players, improperly insulates football players from appropriate disciplinary consequences, and puts students, the program, and the institution at risk of future misconduct."

(SAC ¶ 52.)

## IV.   ADDITIONAL PUBLICLY REPORTED FACTS RELEVANT TO DEFENDANT'S MOTION

Since the filing of Jasmin's FAC, several facts relevant to the issues herein have been publicly revealed.  Specifically, in 2011, prior to Jasmin's rape, Elliott was cited for plagiarism. Later that year, he was cited for plagiarism again, and was issued a sanction of suspension which would have precluded his participation in the beginning of the upcoming Baylor football season. Against Baylor administrator's wishes, and after the deadline for any appeal to be filed by Elliott, Baylor President Ken Starr intervened, and overturned the Baylor administration's sanction of suspension.  Instead, Starr required Elliott to participate in an academic performance plan provided by McCaw and to be supervised by Baylor's athletic department.  Starr's decision allowed Elliott, who was coming off a Big 12 all-freshman season and who would have been forced to sit out the beginning of the upcoming football season, to play at the start of the upcoming football season.[2]

## V.   PLAINTIFF'S STATE LAW CLAIMS ARE TIMELY

In his Motion, Briles incorporates the previously argued statute of limitations defense that he argued while he was named in his official capacity.  The statute of limitations applicable to Jasmin's state law claims is TEX. CIV. PRAC. & REM. CODE 16.0045(b), which provides that

---

[2] Plaintiff has begun to engage in discovery with Defendant Baylor and has many more details regarding the incidents outlined in this section.  However, the Parties are still negotiating a protective order to address the confidential nature of some of the discovery.  Once an agreed to protective order has been finalized, Plaintiff can, and will, amend her SAC to include more relevant details regarding these incidents.

"[a] person must bring suit for personal injury not later than five years after the day the cause of action accrues if the injury arises as a result of" sexual assault or aggravated sexual assault. Every Texas state court to consider this matter in a reported opinion has held that the five-year statute of limitations applies regardless of the theory of liability asserted, or whether the defendant is the actual perpetrator of the assault. *See Doe v. Catholic Diocese of El Paso*, 362 S.W.3d 707, 717 (Tex. App. – El Paso 2011) (holding that while the two year statute generally applies to negligence and intentional infliction of emotional distress claims, the "five-year statute of limitations applies where the plaintiff brings suit for personal injury caused by sexual assault or aggravated sexual assault"); *Stephanie M. v. Coptic Orthodox Patriarchate Diocese of the Southern United States*, 362 S.W.3d 656 (Tex.App. – Houston,14th Dist. 2011); *Doe v. Roman Catholic Archdiocese of Galveston-Houston ex rel. Dinardo*, 362 S.W.3d 803, 809-810 (Tex.App. – Houston, [14th Dist] 2012.)[3] Jasmin's rape certainly qualifies as a sexual assault, and her action was commenced well within five years of the date of the assault. Jasmin's claim is timely.

Moreover, the theory of liability is irrelevant to the analysis of whether the sexual assault specific five-year statute applies. *Stephanie M.* noted:

> section 16.0045(a) applies to a "suit for personal injury," which includes claims for negligence. *There is no language restricting this particular limitations statute to certain types of personal-injury claims*; hence, there is nothing in the statute to indicate that the legislature intended to limit this provision to causes of action against only the perpetrators of sexual assault.

*Stephanie M.*, *supra*, 362 S.W.3d at 659 (emphasis added.)  There is likewise nothing in the statute to indicate the legislature intended to restrict application of this statute to only certain

---

[3] A number of Federal courts, as well as unreported state decisions, have reached the same conclusion.  *See Doe v. Catholic Society of Religious and Literary Educ.*, No. H–09–1059, 2010 WL 345926, at *16 (S.D.Tex. Jan. 22, 2010) (not reported); *Doe I v. Roman Catholic Diocese of Galveston–Houston*, No. 05–1047, slip op. at 21 (S.D.Tex. Mar. 27, 2006) (not reported); *Mayzone, supra,*  2014 WL 3747249 at *3; *C.R. v. American Institution for Foreign Study, Inc.*, 2013 WL 5157699 (W.D. Tex. Sept. 12, 2013) (not reported.)

negligence claims.  Jasmin's theory of liability is irrelevant.  If Briles is a proximate cause of Jasmin's injury – as Jasmin has alleged – the five year statute applies.  *See C.R.*, *supra*, 2013 WL 5157699 at *8 (five year statute "applies to claims against a defendant alleged to have proximately caused the injuries.)

Notwithstanding the unambiguous state of the law, Briles contends that the general, two year personal injury statute of limitations applies to Jasmin's case, and not the specific, five year statute for claims arising out of a sexual assault.  Defendant provides no analysis whatsoever in support of this conclusion.  Rather, he merely cites two authorities in support: *Doe v. Linam*, 225 F.Supp.2d 731 (S.D. Tex. 2002) and *Twist v. Lara*, 2007 WL 2088363 (S.D. Tex. 2007 (unreported).  Defendant's citation to *Linam* is unpersuasive.  First, *Linam* is a federal case, decided long before any state appellate tribunal considered whether to apply the five-year statute of limitations to a negligence claim.  Given this Court's obligation to apply Texas law, it is *Stephanie M.* and its progeny that controls; not *Linam*.  Moreover, *Linam* is also suspect because it did not give any consideration to the question of which statute to apply.  It simply assumed - with no analysis - that the two-year rule was applicable.[4]  Ultimately, every reported state court opinion on the subject has disagreed with *Linam*.  Accordingly, this Court should decline to follow *Linam*, and instead, look to the myriad, more recent state appellate decisions applying the five-year statute to claims like Jasmin's.

Instead of supporting his position, Defendant spends the bulk of its brief on this issue attempting to distinguish *Stephanie M.*  In doing so, Defendant wholly mischaracterizes Plaintiff's theory of liability.  Defendant contends that Plaintiff's negligence theory is, "… premised on alleged failures by the Defendants to properly respond to her allegation of sexual

---

[4] *Twist* is similarly unpersuasive because it simply follows the holding in *Linam* with no analysis of which limitations statute should apply.

assault," and therefore, such claim is "independent of her claims of sexual assault," a requirement noted by the court in *Stephanie M.* to apply the five-year statute of limitations to a third party.  In reality, as was the plaintiff's position in *Stephanie M.*, Plaintiff's negligence claim here derives from Defendant's conduct that contributed to her being raped by Elliott.  Perhaps Defendant has confused Plaintiff's negligence claim against him, with her Title IX claim against Defendant Baylor, which does allege a failure to adequately respond to her rape allegation.  In any event, Defendant's attempt to distinguish *Stephanie M.* is unpersuasive and this Court should follow *Stephanie M.*'s directly applicable holding here.

Additionally, Briles mistakes the language of 16.0045, which is far broader than he assumes.  The statute applies to any injury that "arises as a result of" sexual assault. Ultimately, whether an injury "arises as a result of" sexual assault is a matter of proximate causation; which Briles has not raised in his motion to dismiss.  Regardless, even if Briles were correct, this would not bar Jasmin's claim regarding Briles' negligence in allowing the rape itself to occur; it would simply limit the damages that Jasmin could seek from that breach.  Finally, Defendant's position makes little sense in light of *C.R.*, *supra*, where the court found that a claim by the parents of a victim of childhood sexual abuse to recover out of pocket medical expenses paid on behalf of the child was governed by the five year statute of limitations.  2013 WL 5157699 at *8.  It makes little sense to apply one statute when seeking reimbursement for post abuse medical care, and a different statute when seeking compensation for a defendant's refusal to provide such care.

As outlined above, Defendant's statute of limitations argument is bereft of any real analysis as to why the five-year statute of limitations should not apply to Jasmin's case.  Instead, Defendant contorts Plaintiff's claims in a desperate attempt to distinguish them from the relevant state decisions that unambiguously apply the five-year statute to claims such as Jasmin's.  This

Court should decline to indulge Defendant's mischaracterizations, and instead apply the

unquestionably applicable five-year statute of limitations to Jasmin's claim.

## VI.   DEFENDANT BRILES OWED PLAINTIFF SEVERAL INDEPENDENT DUTIES OF CARE

A plaintiff may not, generally, maintain a tort action against an individual employee or

agent of a company unless that employee or agent owes a duty that is independent of one owed

by the company or organization.  *Leitch v. Hornsby*, 935 S.W.2d 114 (Tex. 1996).  Here,

Defendant Briles owed Jasmin several independent duties of care. As demonstrated in detail

below, Briles owed an independent: (1) common law duty to act reasonably under Texas' multi-

factor duty assessment, (2) common law duty to not engage in conduct that would increase the

likelihood that Jasmin would be harmed, (3) duty, pursuant to the Restatement (Second) Agency

("Restatement") § 350, to execute his responsibilities as Baylor's head football coach in a

manner that did not create an unreasonable risk of harm to others, (4) duty, pursuant to the

Restatement § 354, not to engage in conduct that created an unreasonable risk of harm to others,

and (5) a duty, under Restatement § 356, to have reasonably controlled Elliott.

### A.   Briles Owed Jasmin A Duty Under Texas Multi-Factor Duty Analysis

Under Texas law:

[a]bsent a special relationship, the existence of a duty is a question of law for the court to determine from the particular facts of the case. [Citation.] In making that determination, we balance the risk, foreseeability and likelihood of injury, against the social utility of the actor's conduct, the magnitude of the burden of guarding against the injury, and the consequences of placing that burden on the defendant. [Citation.]  The foremost and dominant consideration of these factors is foreseeability of the risk—although it alone will not warrant imposing a duty.

*Williams v. United Pentecostal Church Intern.,* 115 S.W.3d 612 (Tex.App. – Beaumont 2013)

(unreported); *see also Golden Spread Council, Inc. No 562 of Boy Scouts of America v. Akins,*

926 S.W.2d 287, 289-290 (Tex. 1996) (*Akins*).

These factors favor the imposition of an independent duty on Briles to have acted reasonably to protect female Baylor students, including Jasmin, from Elliott, a known sexual predator.  Briles was aware of prior acts of sexual assault by members of the football program, and of repeated sexual assaults perpetrated by Elliott.  Given this history, it was inevitable – let alone foreseeable – that Elliott would sexually assault another student if Briles did not respond appropriately.  Thus, the most important factor strongly favors the imposition of a duty.  The related factors of risk and likelihood of injury similarly support the existence of a duty because given Elliott's history of assault, the likelihood that another student would be raped by Elliott was off the charts.  Moreover, while Baylor, on the whole, provides services that are valuable to the community, its football team does not carry the same utility and there is no value in protecting students who have habitually assaulted others.  Guarding against this injury would not have resulted in a substantial burden.  Briles, as head football coach, was already responsible for overseeing the football program and disciplining coaches and football players.  Finally, Briles possessed superior knowledge of the risk and had the ability to control his coaches (who tolerated sexual assault by football players), and players (who could have been disciplined under the relevant sexual misconduct policies.)  These factors strongly support the imposition of duties to supervise Elliott, and to protect Jasmin and other students.

B. <u>Briles Owed A Duty To Not Engage In Conduct That Would Increase The Likelihood That Jasmin Would Be Harmed</u>

It is well-established that:

[w]hile a person is generally under no legal duty to come to the aid of another in distress, he is under a duty to avoid any affirmative act which might worsen the situation.  One who voluntarily enters an affirmative course of action affecting the interests of another is regarded as assuming a duty to act and must do so with reasonable care.

*Otis Engineering Corp. v. Clark* (1983) 668 S.W.2d 307, 309 (citations omitted.)  This principal

was applied by the Supreme Court of Texas in a strongly analogous factual circumstance in *Akins*. 926 S.W.2d 287. There, a Boy Scouts of America council had been informed that an assistant scoutmaster in one of its troops was "messing with some boys" and, suspecting the allegation may be serious, investigated but did not remove him. *Id.* at 290. Despite this, a few months later the council introduced the molester to a church that was in need of a scoutmaster. He was hired to the position and molested children. *Id.* at 289. Citing its earlier opinion in *Otis*, the court held that by introducing a suspected molester to the church who hired him, the council "could be found to have actually increased the risk and likelihood of injury in this case. We have recognized that in some circumstances, at least, a person is under a duty to avoid such an affirmative act that may actually worsen a situation." *Id.* at 291.

Like *Akins*, this is not a case where Briles merely sat by and did not take action to protect a person in danger. Instead, Briles' affirmative acts with regard to Elliott made sexual assault more likely. Undoubtedly, Briles entered into an affirmative course of action that placed the success of his football program over the safety of Baylor's students. Even the law firm hired by Baylor to assess its response to sexual assault allegations found that the special treatment afforded to football players accused of assault *increased the risk* of future sexual assaults by showing the players they were not subject to rules applicable to others. Pepper Hamilton found:

> [t]he football program maintained an ad-hoc, internal system of discipline, separate from any Baylor processes which: (1) resulted in "conduct being ignored or players being dismissed from the team based on an informal and subjective process," . . . [and] (3) reinforced "…the perception that rules applicable to other students are not applicable to football players, improperly insulates football players from appropriate disciplinary consequences, and puts students, the program, and the institution at risk of future misconduct."

This informal system was invoked when Jasmin reported Elliott, and in regard to earlier complaints against him. Because Elliott had faced no repercussions from his earlier actions,

10

Briles affirmatively increased the likelihood that Jasmin, and other female students, would be raped by football players, who knew they were unlikely to face any repercussions from their actions.  Moreover, Briles had a duty to reasonably enforce Elliott's sanctions for his multiple honor code violations, which was the direct responsibility of the Athletic Department.  By failing to do so, Briles emboldened Elliott, and contributed to Elliott's perception that rules applicable to other students were not applicable to him.  Because Briles took action in response to Elliott's prior reports of sexual violence, he owed an independent duty not to act to increase the likelihood that Jasmin would be harmed.  Therefore, Briles' Motion must be denied.

C.  <u>Briles Owed An Independent Duty To Reasonably Execute His Responsibilities As Head Football Coach Pursuant To Restatement § 350</u>

In support of its conclusion that an agent may be personally liable for actions taken within the course of employment, so long as the agent owed an independent duty, the court in *Leitch* explicitly relied on Restatement § 350.  *Leitch*, 935 S.W.2d at 117.  That section states, "An agent is subject to liability if, by his acts, he creates an unreasonable risk of harm to the interests of others protected against negligent invasion."  Restatement (Second) of Agency § 350 (1958).  Relevant here, an agent owes an independent duty to act reasonably even while engaging in conduct directly ordered by its principal.  *See Id.,* comment *a* ("An agent is subject to liability for an act involving unreasonable risk of harm to others, although in doing the act in the way in which he does it, he is obeying the command of the principal.")

Though it has yet to be officially adopted by Texas courts, Restatement (Third) of Agency § 7.01, which discusses an agent's liability to third parties and incorporates Restatement (Second) Agency § 350, illustrates this concept clearly.  Comment *b* to § 7.01 states:

An agent whose conduct is tortious is subject to liability. This is so whether or not the agent acted with actual authority, with apparent authority, <u>or within the scope of</u>

<u>employment</u>…The justification for this basic rule is that a person is responsible for the legal consequences of torts committed by that person. <u>A tort committed by an agent constitutes a wrong to the tort's victim independently of the capacity in which the agent committed the tort.</u> The injury suffered by the victim of a tort is the same regardless of whether the tortfeasor acted independently or happened to be acting as an agent or employee of another person.

Restatement (Third) Of Agency § 7.01 (2006), Comment *b* (emphasis added.)

Applying these principles here, Briles unquestionably owed an independent duty to Jasmin to execute his responsibilities as Head Football Coach in a way that did not create an unreasonable risk of harm to other Baylor students. These responsibilities included overseeing Baylor's football program, and disciplining players and coaches when appropriate. Thus, even if all the relevant action taken by Briles here was within the course of his employment as Head Football Coach, § 350 clearly imposes an independent duty on Briles, as an individual, to fulfill his employment responsibilities in a way that did not create an unreasonable risk of harm to others.

Briles argues that because all of the alleged actions taken by him occurred in the course of him acting as head coach, and not in some independent capacity, he cannot owe a duty independent of any duties owed by Baylor.  Defendant's position fails for two reasons.  First, as articulated above, Restatement § 350, which has been adopted and relied on by the Texas Supreme Court, and Restatement (Third) Of Agency § 7.01 explicitly reject this position, noting that an agent owes an independent duty to discharge his employment responsibilities reasonably. Additionally, taken to its logical end, Briles' position would immunize individuals from liability for negligence, so long as they were acting within the scope of their employment.  Thus, the wrecking ball operator who shows up to work drunk and kills several people when he demolishes the wrong building would escape all individual liability for his negligence, simply because he was on the job, if Defendant's position were accepted.  Surely, the law does not support such a

policy.

Because Defendant's position yields an unfavorable policy and has been explicitly rejected by well established legal authorities, the Court should similarly reject it, and hold that Briles owed an independent duty to carry out his responsibilities as head football coach so as to not create an unreasonable risk of harm to others, including Jasmin.  Accordingly, Briles' Motion must be denied.

D.  Briles Owed A Duty Not To Create An Unreasonable Risk Of Harm Pursuant to Restatement § 354

As the Texas Supreme Court has demonstrated its willingness to adopt the Restatement (Second) of Agency, there are several other independent duties that arise as a result of Briles' agency relationship with Baylor.  First, an agent has a duty to not create an unreasonable risk of harm to a plaintiff when that agent undertakes to act for his principal under circumstances in which some action is necessary for the protection of a plaintiff.  Restatement (Second) of Agency § 354 (1958).  As Comment *d* explains, once an agent has entered into the undertaking, even nonfeasance can support the agent's individual liability.  *Id.*, comment *d*.  Moreover, an agent owes this duty independently, even if the principal had no duty to afford protection.  *See Id.* ("The agent may be liable, not only where the principal has duties to others, but also where the conduct of the agent prevents the principal from affording protection which the principal otherwise would have given, although having no duty to give it.")

Here, Briles, as the head of the football program, undertook some action on behalf of Baylor under circumstances in which some action was unquestionably necessary to protect Jasmin.  Specifically, Jasmin has alleged that Briles was aware that prior to Jasmin's rapes by Elliott, Elliott had been criminally convicted for sexual assault and had been accused by six other female Baylor students of sexual assault.  Plaintiff has also alleged that generally, in response to

reports of football player misconduct, athletic department personnel, "…affirmatively chose not to report sexual violence and dating violence to an appropriate administrator outside of athletics."  Instead, athletics personnel completed their own, internal, ad-hoc investigations and rendered their own disciplinary measures.  A reasonable inference can be drawn that Briles, and football personnel acted in accordance with these findings when dealing with Elliott.  In other words, Briles chose to take actions to deal with the multiple reports of sexual assault against Elliott internally.

This decision fits squarely into the circumstances outlined in the Restatement, so as to create an independent duty.  As the Finding of Fact concluded:

> …because reports were not shared outside of athletics, the University missed critical opportunities to impose appropriate disciplinary action that would have removed offenders from campus and possibly precluded future acts of sexual violence against Baylor students.

In other words, Briles' decision to take some action to protect others by dealing with Elliott internally, may have prevented Baylor, to some degree, from taking action that would have precluded him from raping Jasmin.  Thus, Briles owed an independent duty to act reasonably in undertaking these actions.  Accordingly, because Briles owed Jasmin an independent duty, Briles' Motion must be denied.

E.  Briles Owed An Independent Duty To Control Elliott Under Restatement § 356

Briles also owed an independent duty to take reasonable measures to control Elliott. Restatement (Second) Agency § 356.[5]  § 356 states:

> An agent who has taken control over the conduct of another who, as he should realize, is likely to cause physical harm to the person or tangible belongings of third persons unless the conduct of the other is controlled, is under a duty to use reasonable care to take such

---

[5] At least one Texas appellate court has adopted Restatement (Second) Agency § 356.  *See Wilson v. Goodyear Tire & Rubber Co.*, 753 S.W.2d 442, 446 (Tex. App.--Texarkana 1988).

measures of control as he is authorized to take.

Significantly, as comment *a* to § 356 acknowledges, an agent need not enjoy full control of a third person. Rather, an agent in control of a third person owes a duty only to reasonably exercise as much control as he is authorized to exercise.

Here, Briles enjoyed the ability to control Elliott by virtue of the fact that Briles could discipline Elliott and restrict him from participating in football activities. Further, Briles took some action to control Elliott insofar as he oversaw the ad-hoc, internal investigation into reports of Elliott's prior sexually violent acts. Finally, Briles should have realized that Elliott was likely to cause physical harm to female students, given his knowledge of Elliott's sexually violent past. Accordingly, Jasmin's factual allegations support the imposition of an independent duty on Briles pursuant to Restatement § 356. Therefore, Briles' Motion must be denied.

## VII.   PLAINTIFF HAS PROPERLY PLED A CLAIM FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

Here too, though not directly addressed in Briles' Motion, Briles incorporates his prior briefing while sued in his official capacity with respect to Plaintiff's IIED claim. Briles' argument fails for two reasons. First, it is premature to decide the viability of Plaintiff's IIED claim on Briles' Motion. Further, if this Court chooses to decide the viability of Plaintiff's claim, Plaintiff's allegations support a finding of IIED.

A.   It Is Premature To Decide The Viability Of Plaintiff's IIED Claim On Briles' Motion

Defendant correctly notes that IIED is a "gap filler" tort. It applies in "those rare instances in which a defendant intentionally inflicts severe emotional distress in a manner so unusual that the victim has no other recognized theory of redress." *Hoffmann–La Roche, Inc. v. Zeltwanger*, 144 S.W.3d 438, 447 (Tex.2004). "[T]he tort's clear purpose is to supplement existing forms of recovery by providing a cause of action for egregious conduct that its more

established neighbors in tort doctrine would technically fence out." *Standard Fruit and Vegetable Co., Inc. v. Johnson*, 985 S.W.2d 62, 68 (1998) (quotation omitted.)

Briles argues that Jasmin's other claims, Title IX and negligence, already provide a means for recovery so there is "no gap to fill." First, there certainly cannot be any overlap with Plaintiff's Title IX claim, because Plaintiff has not asserted a Title IX claim against Briles. Though Plaintiff's negligence claim theoretically may overlap with her IIED claim, it is too premature to make such a determination on Briles' Motion. If this Court finds that Briles owed a duty to Jasmin, there would be no gap to fill, and IIED would not be an appropriate theory of liability. But, if this Court finds that Briles owed no duty to Jasmin, then the law simply does not otherwise allow a remedy for Briles' actions. In other words, Jasmin's IIED claim would be proper to address Briles' "egregious conduct that [IIED's] more established neighbors in tort doctrine would technically fence out."

## B. Plaintiff Has Pled A Viable IIED Cause Of Action

Under Texas law, IIED is proven if: "(1) [] the defendant acted intentionally or recklessly; (2) [] the conduct was 'extreme and outrageous'; (3) [] the actions of the defendant caused the plaintiff emotional distress; and (4) [] the emotional distress suffered by the plaintiff was severe." *Cantu v. Rocha*, 77 F.3d 795, 810 (5th Cir. 1996.) Briles does not directly contest these elements. Instead, he argues that IIED is "only available in those situations in which severe emotional distress is the intended consequence <u>or</u> primary risk of the actor's conduct." (Motion at p. 17) (italic emphasis omitted, underline emphasis added.) Briles then argues that he did not commit any acts that were intended to cause here severe emotional distress, while ignoring the "primary risk" prong.

Jasmin has plainly alleged that Briles was aware of multiple prior rapes by Elliott. Well

16

before Jasmin was ever exposed to Elliott, Briles was aware that he had been convicted of a misdemeanor sexual assault; had been accused of raping a Baylor student; and had been informed that six other female students had previously accused Elliott of sexual assault.  No actions were taken to prevent future assaults by Elliott, or to protect vulnerable female students from him.  All of this occurred against a backdrop where Briles treated his football players as though they were above the law.  Elliott's rape of Jasmin caused her to suffer severe emotional distress.  It is no stretch of the imagination to find that in many cases the emotional impact of a sexual assault is greater than any physical damage, and in fact this Court is obligated to draw this inference from the pleadings.  The inevitable consequence of Briles' despicable choice to let a serial rapist loose on Baylor's students was that other young girls would be raped by Elliott and suffer severe emotional distress.  This was the primary risk of Briles' conduct.

## VIII.   CONCLUSION

Defendant's Motion asks this Court to adopt the outrageous position that no employee can be liable for their own negligence so long as they are acting within the scope of employment. No Texas authority stands for such proposition, and its application would yield a wildly unfavorable policy.  What's more, Defendant asks this Court to eschew the unanimous application by Texas state appellate courts of the five-year specific, sexual assault statute of limitations to claims such as Jasmin's, in favor of a general, two-year personal injury statute of limitations.  This Court should decline to indulge Defendant's arguments.  As demonstrated in detail above, Texas law unambiguously imposes an independent duty on employees and agents to act reasonably, even while acting within the scope of their employment or agency. Additionally, Texas courts unequivocally apply the five-year, sexual assault statute of limitations to all causes of action arising out of a sexual assault.  Accordingly, this Court should

categorically reject Defendant's Motion, and the underlying arguments therein.

Dated:  January 2, 2017                    Respectfully submitted,


                                           /s/ Alexander S. Zalkin
                                           Alexander S. Zalkin (admitted *pro hac vice*)
                                           alex@zalkin.com
                                           Ryan M. Cohen (admitted *pro hac vice*)
                                           ryan@zalkin.com
                                           THE ZALKIN LAW FIRM, P.C.
                                           12555 High Bluff Drive, Ste. 301
                                           San Diego CA  92130
                                           Telephone: (858) 259-3011
                                           Facsimile: (858) 259-3015

                                           Susan Hutchison (#10354100)
                                           hutch@hsjustice.com
                                           HUTCHISON & STOY PLLC
                                           509 Pecan Street, Suite 201
                                           Fort Worth TX  76102
                                           Telephone: (817) 820-0100
                                           Facsimile: (817) 820-0111

                                           *Attorneys for Plaintiff Jasmin Hernandez*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on January 2, 2017, I electronically filed the foregoing paper with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record in this matter.

THE ZALKIN LAW FIRM, P.C.

/s/ Alexander S. Zalkin
Alexander S. Zalkin (CSB#280813)
alex@zalkin.com
THE ZALKIN LAW FIRM, P.C.
12555 High Bluff Drive, Ste. 301
San Diego CA  92130
Telephone: (858) 259-3011
Facsimile: (858) 259-3015

Dated: January 2, 2017