IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | | |
|---|---|---|
| JASMIN HERNANDEZ, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | 6:16-CV-69-RP |
| | § | |
| BAYLOR UNIVERSITY, et al., | § | |
| | § | |
| Defendants. | § | |

## ORDER

Before the Court in the above-entitled matter is Defendant Ian McCaw's Motion for Protective Order, which seeks to prevent the deposition of third-party Jerry Falwell Jr. (Dkt. 97). Having considered the motion, Plaintiff's response, and relevant law, the Court hereby **GRANTS** Defendant McCaw's Motion.

## I. BACKGROUND

Plaintiff Jasmin Hernandez ("Plaintiff"), a former student at Baylor University, was sexually assaulted by fellow student Tevin S. Elliott ("Elliott") during her freshman year.[1] She asserts claims against Baylor under Title IX of the Education Amendment Acts of 1972 and under the common-law doctrine of negligence. Plaintiff also asserts negligence claims against former Baylor Head Football Coach Art Briles ("Defendant Briles") and former Baylor Athletic Director Ian McCaw ("Defendant McCaw").[2]

In November 2016, Defendant McCaw accepted a position as athletic director at Liberty University. (Mot. Protective Order, Dkt. 97, at 4). At the time, Liberty University President Jerry Falwell, Jr. ("Mr. Falwell") issued a public statement regarding the hiring of Defendant McCaw. (*Id.*).

---

[1] Elliott was convicted of sexually assaulting Plaintiff on April 23, 2015. *See Tevin Elliott v. State of Texas*, No. 10-14-00112-CR, 2015 WL 1877052, at *1 (Tex.App.—Waco, April 23, 2015, pet. ref'd).
[2] Plaintiff also asserted claims against all defendants for intentional infliction of emotional distress; those claims were dismissed. (Order, Dkt. 105, at 25).

1

Specifically, Mr. Falwell stated that he "communicated with people McCaw worked with at Baylor, including Regents who heard everything the investigating law firm ha[d] to say about what happened"; "conducted a background investigation and checked with other sources, including former head coach and athletic director Grant Teaff"; and "spoke openly and directly with Ian McCaw about the situation at Baylor." (Dkt. 97-1, at 1). Plaintiff now seeks to depose Mr. Falwell. (Subpoena to Testify at Dep., Dkt. 97-2; Subpoena to Testify at Dep., Dkt. 119-1).

## II. LEGAL STANDARD

The scope of discovery is broad. *Crosby v. La. Health Serv. and Indem. Co.*, 647 F.3d 258, 262 (5th Cir. 2011). Federal Rule of Civil Procedure 26 provides that, unless otherwise limited by court order, parties

> may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

Fed. R. Civ. P. 26(b)(1). "A discovery request is relevant when the request seeks admissible evidence or 'is reasonably calculated to lead to the discovery of admissible evidence.'" *Crosby*, 647 F.3d at 262 (quoting *Wiwa v. Royal Dutch Petrol. Co.*, 392 F.3d 812, 820 (5th Cir. 2004)).

Federal Rule of Civil Procedure 26(b)(2)(C) mandates that a court limit the frequency or extent of discovery otherwise allowed if it determines that

> (i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1).

Fed. R. Civ. P. 26(b)(2)(C). Discovery is outside the scope permitted by Rule 26(b)(1) if the discovery sought is (1) privileged; (2) not relevant to any party's claims or defense; or (3) not "proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). Courts can "try to achieve

2

proportional discovery by regulating the timing and sequence of discovery . . . as the circumstances warrant." Fed. R. Civ. P. 26 cmt. "The party seeking discovery bears the initial burden of showing that the materials and information sought are relevant to the action or will lead to the discovery of admissible evidence." *Reynolds v. Cactus Drilling Co., LLC*, No. MO:15-CV-00101-DAE-DC, 2015 WL 12660110, at *2 (W.D. Tex. Dec. 21, 2015).

The Federal Rules also provide for permissive limitations on discovery requests. To that end, a court "may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1). That order may—among other things—forbid the discovery, forbid inquiry into certain matters, or limit the scope of discovery to certain matters. *Id.* In such circumstances, "the burden is upon [the party seeking the protective order] to show the necessity of its issuance, which contemplates a particular and specific demonstration of fact as distinguished from stereotyped and conclusory statements." *In re Terra Int'l*, 134 F.3d 302, 306 (5th Cir. 1998) (quoting *United States v. Garrett*, 571 F.2d 1323, 1326 n.3 (5th Cir. 1978)); *Robinson v. Dallas Cty. Cmty. Coll. Dist.*, No. 3:14-CV-4187-D, 2016 WL 1273900, at *3 (N.D. Tex. Feb. 18, 2016) (explaining that the recent amendments to Rule 26 "do not alter the burdens imposed on the party resisting discovery"). Generally, "'[j]udges should not hesitate to exercise appropriate control over the discovery process.'" Fed. R. Civ. P. 26 cmt. (quoting *Herbert v. Lando*, 441 U.S. 153, 177 (1979)).

### III. DISCUSSION

Defendant McCaw argues that both the mandatory and permissive limitations on discovery requests require the Court to prohibit Plaintiff from seeking the deposition of Falwell. (Mot. Protective Order, Dkt. 97, at 9). The Court addresses each of these arguments in turn.

## A. Rule 26(b)(1)

*1. Relevance*

With respect to Rule 26(b)(1)'s mandatory limitations on discovery requests, Defendant McCaw first argues that the Court "must issue a protective order prohibiting Plaintiff from deposing President Falwell because the deposition . . . will not reveal information relevant to any parties' claim or defense." (*Id.*). Specifically, Defendant McCaw asserts that (1) Mr. Falwell's decision to hire Defendant McCaw—made over four years after the incident that forms the basis of Plaintiff's claims—"has nothing to do with McCaw's actions or inactions while at Baylor that are the subject of this lawsuit"; and (2) the only information Mr. Falwell may have is second- or third-hand knowledge received from Defendant McCaw and/or members of the Baylor Board of Regents. (*Id.* at 10).

In response, Plaintiff argues that the discovery sought is relevant to her negligence claim against Defendant McCaw and to her negligence and Title IX claims against Baylor. (Resp., Dkt. 109, at 7–8). Mr. Falwell publicly stated that he communicated with people Defendant McCaw worked with at Baylor, including but not limited to members of the University's Board of Regents, regarding "what happened at Baylor." (Dkt. 97-1 ("We communicated with people [Defendant McCaw] worked with at Baylor, including Regents . . ."; "We conducted a background investigation and checked with other sources, including former head coach and athletic director Grant Teaff . . .")). Those communications led Mr. Falwell to conclude that Defendant McCaw "did not attempt to hide the sexual assault that was reported." (*Id.*). Plaintiff argues that such information is irrefutably relevant to her case, which is grounded in the defendants' alleged failure to reasonably respond to rampant sexual assault allegedly committed by the university's football players. (Resp., Dkt. 109, at 8).

The Court agrees with Plaintiff. Defendant McCaw's assertion that Mr. Falwell's decision to hire him "has nothing to do with McCaw's actions or inactions while at Baylor that are the subject

4

of this lawsuit," (Mot. Protective Order, Dkt. 97, at 10), is belied by Mr. Falwell's contemporaneous publication of a statement indicating that he investigated Defendant McCaw's involvement in the sexual assault allegations at Baylor, (Dkt. 97-1, at 1). Information regarding Mr. Falwell's investigation into and communications regarding Defendant McCaw's actions at Baylor are certainly relevant to Plaintiff's assertions that Baylor was "deliberate[ly] indifferent to a known issue of sexual misconduct within its football program," (Second Am. Compl., Dkt. 53, ¶ 84), and that Baylor and Defendant McCaw's "ad hoc, internal system of discipline' for football players" and "untrained, flawed, and biased investigations" of sexual assault allegations "affirmatively increased the likelihood that Plaintiff, and other female students, would be raped by football players," (*id.* ¶¶ 91, 101).

Plaintiff also argues that the discovery sought is relevant because Mr. Falwell "publicly admitted that he obtained information regarding Pepper Hamilton's independent investigation into Baylor's sexual assault scandal." (Resp., Dkt. 109, at 9). In its response to Plaintiff's first request for production of documents, Baylor withheld information related to the Pepper Hamilton investigation on the basis of the attorney-client and work-product privileges. (Dkt. 109-1, at 2, 7–8). Mr. Falwell's assertion that Baylor representatives provided him information about the Pepper Hamilton investigation, Plaintiff asserts, "would support an argument that Baylor waived any protections." (Resp., Dkt. 109, at 9).

The Court agrees. The Court reserves the issue of whether the materials in question are indeed protected by the attorney-client or work-product privileges. It notes, however, that the former is waived by disclosure of confidential communications to third parties. *Nguyen v. Excel Corp.*, 197 F.3d 200, 207 (5th Cir. 1999) (collecting cases); *Shields v. Sturm, Ruger & Co.*, 864 F.2d 379, 382 (5th Cir. 1989). Baylor has asserted that information related to the Pepper Hamilton investigation is subject to the attorney-client privilege, and Mr. Falwell's statement suggests he communicated with Baylor agents regarding that investigation. Mr. Falwell may, therefore, be in possession of

5

information relevant to whether the attorney-client privilege indeed applies to the material in question.

Plaintiff finally argues that the discovery sought is relevant for impeachment purposes, as she intends to depose Defendant McCaw and several former and current members of Baylor's Board of Regents. The Court agrees. *See, e.g.*, *Cazorla v. Koch Foods of Miss., L.L.C.*, 883 F.3d 540, 557–59 (5th Cir. 2016) (finding that a district court did not abuse its discretion in determining that information sought in discovery was relevant under Rule 26(c) for, in part, impeachment).

For the foregoing reasons, the Court finds that the discovery sought is relevant for purposes of Federal Rule of Civil Procedure 26(b)(2)(C) and 26(b)(1).

*2. Convenience, Burden, and Cost*

Defendant McCaw next argues that the Court must limit the extent of discovery because the discovery sought can be obtained directly from Baylor, its regents, and Defendant McCaw. (Mot. Protective Order, Dkt. 97, at 12). In response, Plaintiff asserts that Mr. Falwell's statement indicates he "conducted an entire background investigation into Defendant McCaw and his role in the Baylor sexual assault scandal" and that Mr. Falwell "admittedly spoke to other sources." (Resp., Dkt. 109, at 12).

Here, the Court agrees with Defendant McCaw. At this point in time, there is little reason to believe Plaintiff would be unable to obtain the same information she seeks from Mr. Falwell from other, more direct sources. For example, a deposition of Defendant McCaw may reveal each of the "other sources" with whom Liberty communicated regarding his involvement in the events at issue, as could an interrogatory requesting that Mr. Falwell name each of the "other sources" with whom Liberty conferred. (*See* Dkt. 97-1 (stating that Liberty communicated with members of the Baylor Board of Regents and former Athletic Director Grant Teaff, but suggesting that the university "checked with other sources" and conducted its own investigation into Defendant McCaw's role in

6

the events at issue)). Further, a deposition of Defendant McCaw or members of the Board of Regents could reveal not only what these individuals told Mr. Falwell and others at Liberty, but also their personal knowledge of the events. In other words, conducting depositions of these sources may provide Plaintiff not only the same information she seeks from Mr. Falwell, but also more relevant, more reliable testimony.

At this point in the litigation, the only relevant information Plaintiff seeks from Mr. Falwell that she could not obtain directly from other sources is impeachment evidence. But while impeachment evidence is relevant, Plaintiff has yet to provide any evidence that a deposition of Mr. Falwell will produce different information from what Defendant McCaw, the regents, or any other sources would disclose in their own depositions. This argument is reinforced by the fact that the noticed deposition currently at issue was Plaintiff's first. At this time, therefore, allowing the deposition of Mr. Falwell is not proportional to the needs of this case.

The Court acknowledges that while Plaintiff has not persuasively rebutted Defendant's arguments at this point in time, she may be able to do so later. After Plaintiff deposes Defendant McCaw, members of the Baylor Board of Regents, and others, certain statements or inconsistencies in the evidence may indicate that further discovery, including the deposition of Mr. Falwell, is warranted. Allowing Plaintiff to ask this Court to lift the protective order at some later time if subsequent discovery suggests a deposition of Mr. Falwell would reveal new information is consistent with Rule 26's concept of proportionality. As the comments on the rule explain:

> Most discussions of discovery management focus on courts trying to achieve proportional discovery by placing limits on the frequency or extent of discovery. Courts can also try to achieve proportional discovery by regulating the timing and sequence of discovery, principally by ordering that discovery be conducted not all at once, but rather in stages or phases, as the circumstances warrant.
>
> For example, the court can structure the order of discovery to ensure that the parties gather the "low hanging fruit" first, taking discovery from the most important or the most accessible sources before determining whether there is

> any need to cast the discovery net more widely. That approach is often referred to as "focused" discovery, and it has two main benefits: (1) focusing on the most important information from the most accessible sources naturally keeps those efforts well within the proportionality requirement; and (2) the information obtained can be very helpful in determining what further discovery efforts would be proportional to the needs of the case. For example, the early results may show or strongly suggest that there is more important information to be gathered. On the other hand, if discovery from the "best" sources comes up dry, that may raise legitimate questions about the expected benefit of further discovery. Each case will depend on its own circumstances.

Fed. R. Civ. P. 26 cmt. Here, as Plaintiff has not yet gathered the "low hanging fruit," this Court finds it would be inappropriate to allow her to pursue information from less convenient, less relevant sources—namely, Mr. Falwell. But Plaintiff has more than ten months to continue discovery. In the future, if she believes the circumstances warrant, she may request that this Court lift the protective order.

However, for now, Defendant has demonstrated that discovery proportional to the needs to this case can be obtained from a more convenient, less burdensome, and less expensive source. *See* Fed. R. Civ. P. 26(b)(2)(C). The Court will therefore grant Defendant's motion.

## IV. CONCLUSION

For the reasons stated herein, the Court hereby **GRANTS** Defendant Ian McCaw's Motion for Protective Order (Dkt. 97).

**SIGNED** on May 1, 2017.

_____
ROBERT PITMAN
UNITED STATES DISTRICT JUDGE